PRINGLE–ASSOCIATED MORTGAGE CORPORATION, a Louisiana Corporation, Plaintiff-Appellant,

v.

SOUTHERN NATIONAL BANK OF HATTIESBURG, MISSISSIPPI, a National Banking Corporation, Defendant-Appellee.

No. 76–1927.

United States Court of Appeals, Fifth Circuit.

April 20, 1978.

Thomas W. Tyner, Hattiesburg, Miss., for plaintiff-appellant.

Francis T. Zachary, George E. Gillespie, Jr., Jere R. Ramsay, Hattiesburg, Miss., for defendant-appellee.

Before TUTTLE, CLARK, and RONEY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

This case involves the obligation of an issuing bank to honor a draft drawn under a letter of credit. In the district court, Pringle Associated Mortgage Corporation (Pringle), the beneficiary, sued Southern National Bank of Hattiesburg (SNB), the issuer, to collect on its letter of credit. Following a hearing without a jury, the district court ruled in favor of SNB. The court concluded that Pringle was not entitled to payment because it had not complied with conditions which the court read into the letter of credit. In reaching this conclusion the court relied upon the underlying contract between Pringle and SNB's customers who procured the letter of credit. We reverse.

In August 1972 Pringle committed itself to loan $1,275,000 to a corporation, Gautier Gardens, Inc., formed by Forrest M. Morris, Jr., and J. L. Sellers to construct apartment buildings in Jackson County, Mississippi. Pringle's commitment was in the form of a construction loan agreement. The loan was secured by a first mortgage lien on the property and the personal guaranty of Morris and Sellers. In addition, the commitment letter for this interim loan provided that the construction work must be bonded and required Morris and Sellers to obtain an irrevocable letter of credit in the amount of $250,000, naming Pringle as beneficiary. Because that sum exceeded a single bank's loan ceiling, separate letters of credit were obtained from two banks, First Mississippi National Bank of Hattiesburg, Mississippi, and SNB. SNB actually issued two letters of credit. The first was issued on August 29, 1972, and Pringle accepted it at the closing of the loan. In April 1973 Pringle requested that the letters of credit be extended. SNB issued a revised letter on

April 13, which is reproduced in the margin.[1] The revised version contained two additions to and one change from the original version. First, a revised date was added. Second, a paragraph was inserted to provide that SNB's letter of credit was to be drawn upon only after the other bank's letter was exhausted. Third, the expiration provision was changed.

Construction of the apartments was completed in November 1973. Throughout their relationship, Pringle and Gautier Gardens, Inc., expected that the New York City Employees Retirement Fund would provide the permanent financing for the apartments. The Retirement Fund never honored its agreement. Gautier Gardens, Inc., sued the Retirement Fund in a separate action which has since been settled and is not significant here.

On May 14, one day prior to the expiration of the revised SNB letter of credit, Pringle presented its draft for $125,000 to the president of SNB, Clarence B. Davis. Davis questioned the authority of William T. Schully, executive vice president of Pringle, to endorse the draft on behalf of Pringle. Davis also challenged Pringle's right to draw on the letter of credit because Pringle had provided neither evidence that the other bank's letter of credit had been exhausted nor proof that the apartments had not been completed. The following day Pringle returned to SNB with a cashier's check issued by First Mississippi National Bank pursuant to its letter of credit, an affidavit signed by Schully stating that the First Mississippi letter of credit had been exhausted, and a copy of an extract from the minutes of Pringle's board of directors authorizing Schully to act for the corporation. SNB again declined to honor the draft. On May 16, in a letter to Pringle, SNB's attorney listed the additional documentation that would be required before SNB would honor the draft. Pringle filed suit on May 30, alleging that SNB had wrongfully failed to honor the draft.

After a trial without a jury, the district court ruled that SNB was not liable because Pringle's presentation had not complied with three conditions which the court iden-

---

1. Material in italics was added to the second letter; material in brackets in the final paragraph was present in the first letter but deleted from the second letter:

Southern National Bank
118 West Pine Street
Hattiesburg, Mississippi

Clarence B. Davis
    President
August 29, 1972
*Revised April 13, 1973*
                    Irrevocable Credit No. 009
Pringle-Associated Mortgage Corporation
P. O. Box 4127
New Orleans, LA 70118
Gentlemen:
This irrevocable letter of credit is issued at the request of Forrest M. Morris, Jr. and J. L. Sellers, both of Hattiesburg, Mississippi, in favor of Pringle-Associated Mortgage Corporation, New Orleans, Louisiana, in connection with an apartment construction commitment dated August 1, 1972, to Gautier Gardens, Inc. to build 134 apartment units on approximately 8.2 acres of land located on the Westerly side of Van Cleave Road, one quarter mile North of U.S. Highway # 90, Gautier, Jackson County, Mississippi.
This bank does hereby issue this letter of credit for One Hundred and Twenty-Five Thousand dollars in favor of Pringle-Associated Mortgage Corporation as additional collateral for a loan

to Gautier Gardens, Inc. in the amount of $1,275,000 due and payable not later than 12 months from the date of commencement of the term of the loan. (Ref. paragraph 5a and 5b of commitment.)
*It is understood that this letter of credit is to be drawn upon only after the credit extended under a letter of credit issued on the same project by First Mississippi National Bank of Hattiesburg, Mississippi in the amount of $125,000 has been exhausted.*
All drafts drawn under this letter of credit must be endorsed hereon and must bear the clause "Drawn under Southern National Bank Letter of Credit No. 009 dated 8/29/72 for the account of Forrest M. Morris, Jr. and J.L. Sellers."
The purpose of this letter is to assure satisfactory completion of the construction of the apartments, and expires [upon satisfactory completion of the said apartments or one year from date of commitment whichever is the shortest time.] *upon the closing of permanent financing of the project by New York City Employees Retirement System or on May 15, 1974, whichever date is earlier.*
Yours very truly,
/s/ Clarence B. Davis
Clarence B. Davis
President

tified in the letter of credit. The first condition arose from the statement in the third paragraph of the revised letter of credit that it could be drawn upon only "after the credit extended under a letter of credit issued on the same project by First Mississippi National Bank of Hattiesburg, Mississippi, in the amount of $125,000 has been exhausted." The court interpreted that statement to mean that the SNB letter of credit could not be drawn upon until the funds available under the other bank's letter of credit had been expended in the construction of the apartments. That interpretation was based upon the court's determination that the purpose of the SNB letter of credit was to ensure completion of the construction.

The second condition also grew out of the court-determined purpose of the letter of credit. Pringle was held to be entitled to payment only after showing that the apartments had not been constructed.

Finally, the district court focused on the fourth paragraph of the revised letter which provided that drafts drawn under the letter of credit must be endorsed "hereon" before the bank became liable to honor them. The court concluded that this meant the payee must endorse the draft. This had the effect of changing "endorsed hereon" to read "endorsed thereon."

■ The district court was in error in construing conditions to exist in the letter of credit on the basis of the underlying agreements between the beneficiary and the bank's customer. The essence of a letter of credit is the promise by a bank, or other issuer, to pay money. The key to the uniqueness of a letter of credit and to its commercial vitality is that the promise by the issuer is independent of any underlying contracts. *See Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224, 1238–39 (5th Cir. 1973), *cert. dismissed*, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974); *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir. 1970). As the Third Circuit has said, "[t]he benefi-

ciary bases his claim on the letter of credit . . . —not on the agreement between the customer and the issuing bank, nor upon the underlying arrangement between customer and beneficiary." *Chase Manhattan Bank v. Equibank*, 550 F.2d 882, 886 (3d Cir. 1977). Thus, a court should not resort to those underlying agreements in interpreting a letter of credit. *See Dulien Steel Products Incorporated of Washington v. Bankers Trust Company*, 298 F.2d 836, 841 (2d Cir. 1962). The beneficiary's noncompliance with the underlying contract does not affect the issuer's liability unless a reference to the underlying contract explicitly creates a condition for honoring a draft. General references to underlying agreements are surplusage and should not be considered in deciding whether the beneficiary has complied with the terms of the letter of credit. *West Virginia Housing Development Fund v. Sroka*, 415 F.Supp. 1107, 1112 (W.D.Pa.1976).

The purpose of the parties in acquiring a letter of credit usually is to facilitate a commercial transaction. The purpose of the letter of credit itself, however, is to assure payment of money. The fact that parties may use a letter of credit in an unusual way must not produce a variant approach to the letter's construction. No matter how unusual the use, if the interpretation of an unambiguous letter of credit is not guided by principles developed from the unique nature of letters of credit, this species of document could lose its recognized value as a guarantee of payment. *See* 3 Anderson on the Uniform Commercial Code § 5–109, at 395–96 (1971).

■ The principles that govern transactions involving letters of credit in Mississippi come from article 5 of the Uniform Commercial Code. Miss.Code Ann. §§ 75–5–101 *et seq.* (1972).[2] Article 5 applies, however, only to transactions that fall within one of the definitions in section 5–102. Section 5–102(1)(c) makes the article applicable "to a credit issued by a bank or other person if

---

**2.** Later references to the Mississippi Uniform Commercial Code in this opinion will omit the

title number; the UCC is codified in title 75 of the Mississippi Code 1972.

the credit is not within subparagraphs (a) or (b) but conspicuously states that it is a letter of credit or is conspicuously so entitled." Because the letter from SNB conspicuously stated that it was a letter of credit, the transaction is governed by article 5.[3] Under section 5–114(1), "[a]n issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary."

Properly construed under article 5, the SNB letter of credit contains only three conditions, or terms: (1) the letter of credit from First Mississippi National Bank must be "exhausted"; (2) any drafts drawn under the SNB letter of credit must be endorsed "hereon"; and (3) all drafts against the payment promised must bear the required clause identifying this precise letter of credit. SNB has not challenged Pringle's compliance with the third condition; the draft tendered had the correct clause.

■ SNB contends that the requirement for "exhaustion" was not met. Agreeing with SNB, the district court concluded that the exhaustion requirement meant that the funds from the other bank's letter of credit must have been expended in the construction of the apartments. But that conclusion depends upon the underlying contract, which is irrelevant to an interpretation of the letter of credit. Read without reliance upon the contract, the word "exhaustion" can mean only that all of the funds available under First Mississippi's letter of credit must have been withdrawn. When Pringle made the second presentation of its draft to SNB it also presented a cashier's check from First Mississippi for the full amount of the letter of credit. Although the cashier's check is not in the record, at oral argument counsel for SNB agreed that the check was sufficient evidence to support the conclusion that all of the funds available from the other letter of credit had been withdrawn. Thus, Pringle had complied with the first term of the letter of credit.

■ SNB's other contention is that Pringle failed to endorse the draft as required by the letter of credit. That interpretation is clearly incorrect. The plain language of the letter of credit requires that drafts drawn under the letter be endorsed "hereon," or in the terminology of the UCC, "noted" on the letter of credit itself. See UCC § 5–108. Such a requirement is intended to assure the commercial utility of a letter of credit by providing visual evidence of the amount of credit still outstanding under the letter at any time. Since the payee of any draft must endorse it before negotiating it, see UCC § 3–202, restating this requirement in a letter of credit would be redundant. There is no plausible basis for changing the word "hereon" in the letter of credit to "thereon." It is true that Pringle did not endorse the draft. Had SNB's refusal to pay been predicated on that ground, and had Pringle persisted in its refusal to endorse, such action would be a defense to nonpayment. Here, however, Pringle refused to endorse the draft only after SNB indicated its intention not to honor the draft.

Since Pringle complied with the terms of the letter of credit, SNB wrongfully dishonored the draft. Pringle is therefore entitled to a judgment for $125,000. See UCC § 5–115. The judgment appealed from is reversed and the cause is remanded for further proceedings, including the resolution of the issue of interest and incidental expenses, by the district court.

REVERSED and REMANDED.

**3.** The requirement in the revised letter of credit making exhaustion of the other bank's letter of credit a condition precedent may also be interpreted as requiring such documentation as would invoke section 5–102(1)(a). We do not resolve this issue. Whether the letter of credit falls under section 5–102(1)(a) or section 5–102(1)(c) is immaterial for this opinion. In other situations, if the issuing bank were insolvent for example, the choice of subsection would be important. See UCC § 5–117.