829 F.2d 949
 4 UCC Rep.Serv.2d 1526
 TRANS MERIDIAN TRADING INC., Plaintiff-Appellant,
v.
EMPRESA NACIONAL DE COMERCIALIZACION DE INSUMOS,
Multinacional Latinoamericana De Comercializacion
De Fertilizantes, Banque Indosuez, and
Banco Continental, Defendants-Appellees.
 No. 86-6627.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 7, 1987.
Decided Oct. 9, 1987.
 
 Mark B. Gilmartin, Los Angeles, Cal., for plaintiff-appellant.
 John E. Burns, Los Angeles, Cal., for defendant-appellee Banco Continental.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, HALL and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge.
 
 
 1
 This action involves a letter of credit issued by Banque Indosuez in favor of Banco Continental at the request of Trans Meridian Trading Inc. (TMTI). Banco Continental has demanded payment on the letter of credit. TMTI seeks to enjoin Banco Continental from demanding payment and Banque Indosuez from making payment. The district court denied TMTI's motion for a preliminary injunction. This court granted TMTI's request for a stay pending appeal. We now affirm the district court's decision and lift the stay.
 
 FACTS
 
 2
 Defendant Multinacional Latinoamericana de Comercializacion de Fertilizantes (MULTIFERT) is a Panamanian company that acts as a bid solicitation agent for various Latin American countries. It solicited a bid from TMTI to supply fertilizer to Empresa Nacional de Comercializacion de Insumos (ENCI). TMTI is a California corporation. ENCI is a corporation wholly owned by the government of Peru.
 
 
 3
 On July 7, 1986,[1] TMTI submitted its bid to MULTIFERT. As a condition of bid submission, TMTI was required to post a bond in favor of ENCI and MULTIFERT. At TMTI's request, Banque Indosuez-Los Angeles issued the bid bond through Banque Indosuez-Panama. In consideration therefor, Banque Indosuez-Los Angeles issued letter of credit no. 1441-SB (LC 1441-SB) in favor of Banque Indosuez-Panama for $100,400.
 
 
 4
 In its bid, TMTI required that ENCI's payment be by an irrevocable and confirmed letter of credit issued by a prime United States bank. The bid also stated that if ENCI failed to post such a letter of credit, the fertilizer shipment would be delayed.
 
 
 5
 On July 14, MULTIFERT accepted, on behalf of ENCI, a portion of TMTI's bid involving large quantities of fertilizer. The acceptance restated ENCI's obligation to establish a letter of credit at a prime United States bank prior to shipment. TMTI sent MULTIFERT a draft format for the letter of credit that ENCI should post, stating a proposed value of $3,638,932.50 and noting shipping dates for the two shipments necessary to fill ENCI's order.
 
 
 6
 The contract also required TMTI to post a performance bond in favor of ENCI through a bank in Lima totaling six percent of the contract price, or $205,239. Banque Indosuez-Los Angeles arranged the issuance of a performance bond in favor of ENCI through Banco Continental. Banco Continental is located in Lima and describes itself as "indirectly owned by agencies of the government of Peru." In consideration for the performance bond, Banque Indosuez-Los Angeles issued letter of credit no. 1459-SB (LC 1459-SB) for $205,239 to Banco Continental on behalf of TMTI.
 
 
 7
 Under LC 1459-SB, Banque Indosuez was obligated to pay Banco Continental $205,239 upon Banco Continental's presentation of two documents: (1) Banco Continental's certification that it had been called upon to pay under the performance bond, and (2) an original statement "purportedly signed by the Gerente General of ENCI" that TMTI had been awarded the fertilizer contract but failed to deliver the fertilizer. LC 1459-SB also stated that "it is a condition of this letter of credit that our standby letter of credit no. 1441-SB ... is now null and void." Finally, LC 1459-SB provided that "this credit is subject to the Uniform Customs and Practice for Documentary Credit (1983 Revision) International Chamber of Commerce (Publication no. 400)."
 
 
 8
 In two telexes Banco Continental requested that Banque Indosuez-Los Angeles delete from LC 1459-SB the condition that LC 1441-SB is null and void, because Banco Continental was not involved in the LC 1441-SB transaction. TMTI asked MULTIFERT to release LC 1441-SB, as required by LC 1459-SB. MULTIFERT replied it would do so once it determined that TMTI's performance bond was satisfactory. The record does not show whether LC 1441-SB was ever released. It expired by its own terms on August 30.
 
 
 9
 From July 28 through August 12 TMTI and ENCI or MULTIFERT exchanged telexes regarding vessel nomination, shipping dates, and ENCI's posting letters of credit. ENCI apparently believed it had a contractual shipping window of August 1-15 for the first shipment, whereas TMTI believed it had no obligation to confirm shipment dates until ENCI posted an acceptable letter of credit. ENCI opened two letters of credit in favor of TMTI, however, TMTI found them unacceptable because they were not opened at a prime United States bank. TMTI claims it arranged at least one vessel and shipping date, but was forced to cancel because it had not received an acceptable letter of credit from ENCI.
 
 
 10
 On August 15, TMTI advised ENCI of its vessel nominations for loading approximately August 25-September 5 and September 10-20. TMTI also requested that ENCI open new letters of credit and amend those already opened.
 
 
 11
 On August 16, the New York Times reported that the International Monetary Fund had declared Peru ineligible for new loans. TMTI expressed concern about this report.
 
 
 12
 On August 18, ENCI notified TMTI that it considered the contract cancelled because of TMTI's failure to ship within the contract period.
 
 
 13
 On August 22, ENCI requested payment from Banco Continental on the performance bond. That same day, Banco Continental requested payment of $205,239 from Banque Indosuez-Los Angeles under LC 1459-SB. Banco Continental certified to Banque Indosuez that all terms and conditions of the letter of credit had been met and that the relevant documents were being forwarded.
 
 
 14
 On August 26, TMTI filed this action against ENCI, MULTIFERT, and Banque Indosuez claiming breach of contract and fraud. On August 27, the district court issued a temporary restraining order (TRO) enjoining Banque Indosuez from paying under either letter of credit and set a preliminary injunction hearing for September 5. Banque Indosuez and TMTI notified Banco Continental of the TRO on August 27 and 29.
 
 
 15
 On September 5, Banco Continental paid ENCI under the performance bond. On September 13, TMTI filed its first amended complaint, adding Banco Continental as a defendant.
 
 
 16
 TMTI claims that Banco Continental's request for payment under LC 1459-SB was fraudulent. TMTI alleges Banco Continental knew or should have known that the documents ENCI presented to it falsely stated that all the terms and conditions of LC 1459-SB had been met when, in fact, TMTI had not failed to perform under the contract. TMTI alleges that because ENCI and Banco Continental are controlled by the Peruvian government, and because of a financial crisis facing Peru, "a scheme was developed whereby ENCI and Banco Continental would defraud [TMTI] by having ENCI induce [TMTI] to delay the first shipment of [fertilizer] and then have Banco Continental make a fraudulent demand for payment upon Banque Indosuez under Letter of Credit No. 1459-SB."
 
 
 17
 TMTI contends it is entitled to a preliminary injunction because:
 
 
 18
 (1) LC 1459-SB provides that the law governing the transaction is the Uniform Customs and Practice for Documentary Credit (UCP), which TMTI argues allows the district court to enjoin payment on letters of credit;
 
 
 19
 (2) If California law applies, California law allows an injunction prohibiting either the issuer from paying on a letter of credit or the beneficiary from demanding payment on a letter of credit; and
 
 
 20
 (3) TMTI has demonstrated it meets the requirements for a preliminary injunction.
 
 
 21
 The district court held that California law governs the transaction, that it does not allow the court to enjoin letters of credit, and that TMTI is not entitled to a preliminary injunction.
 
 
 22
 On appeal, TMTI specifies the conditions of LC 1459-SB which it believes were not met: (1) LC 1441-SB had not been voided when Banco Continental demanded payment, and (2) no evidence was produced in district court that the original statement purportedly signed by the Gerente General of ENCI stating that TMTI had failed to perform was delivered to Banque Indosuez.
 
 
 23
 In response, Banco Continental claims: (1) it had no involvement whatsoever in LC 1441-SB, and (2) the Gerente General's statement was not produced as evidence in the district court because TMTI did not raise it as an issue until this appeal.
 
 STANDARD OF REVIEW
 
 24
 This court reviews de novo a district court's determination of state law. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). This is true, as well, for questions of law underlying a preliminary injunction motion. California ex rel. Van de Kamp v. Tahoe Regional Planning Agency, 766 F.2d 1308, 1312 (9th Cir.1985). We review a district court's findings of fact under the clearly erroneous standard. Colorado River Indian Tribes v. Town of Parker, 776 F.2d 846, 849 (9th Cir.1985).
 
 DISCUSSION
 A. Choice of Law
 
 25
 TMTI argues that because LC 1459-SB contains a provision that the document is subject to the Uniform Customs and Practice Act for Documentary Credit, the UCP governs to the exclusion of California law. Banco Continental contends that California law applies.
 
 
 26
 In a diversity action, a federal court must apply the choice of law rules of the state in which the action was filed. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); In re Yagman, 796 F.2d 1165, 1170 (9th Cir.1986). Thus, California's choice of law rules apply to this case.
 
 
 27
 California applies the governmental interest analysis in choosing what law to apply. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Boeing Co., 641 F.2d 746, 749 (9th Cir.1981). Under this approach, California law will be applied unless it conflicts with the foreign law and both California and the foreign jurisdiction have significant interests in having their law applied. Id. Where significant interests conflict, the court must assess the comparative impairment of each state's policies. Id.
 
 
 28
 Here, the alternative law that TMTI wishes the court to apply is not that of a foreign jurisdiction, but rather the UCP, which is a compendium of commercial practices published by the International Chamber of Commerce. Wyle v. Bank Melli of Tehran, 577 F.Supp. 1148, 1164 (N.D.Cal.1983). We rejected this argument in Pubali Bank v. City Nat'l Bank, 777 F.2d 1340, 1343 (9th Cir.1985) (Pubali II ). There, we held that where California law applies, a provision in a letter of credit that the UCP governs the transaction does not prevent application of California's Commercial Code.
 
 
 29
 Although TMTI has suggested only that we apply the UCP, Peruvian law may also apply to the transaction. Applying the government interest analysis, however, we see that refusing to enjoin the letter of credit apparently does not conflict with Peruvian law. Moreover, even if refusing to enjoin payment on a letter of credit did conflict with Peruvian law, California has a significant interest in seeing that its law refusing to permit courts to enjoin payments on letters of credit in this situation is enforced. Thus, the district court was correct in applying California substantive law to determine whether an injunction should issue.
 
 
 30
 B. Injunction of Letters of Credit Under California Law
 
 
 31
 Letter of credit law is premised on the principle that the letter of credit is independent of the underlying contract. U.C.C. Sec. 5-114, official code comment p 1. "The commercial viability of letters of credit depends on their ability to provide an assurance of payment." Agnew v. Federal Deposit Ins. Corp., 548 F.Supp. 1234, 1238 (N.D.Cal.1982).
 
 
 32
 California Commercial Code section 5114 governs this transaction and for the most part is consistent with the Uniform Commercial Code (U.C.C.).[2] Under both, the issuer must inspect the documents accompanying the demand to see that they comply with the conditions stated in the letter of credit. If the beneficiary qualifies as a holder in due course or bona fide purchaser of the letter of credit, the issuer must honor the demand, without exception. If the beneficiary does not rise to the level of a holder in due course, the issuer has the discretion to honor or reject a payment demand if the customer notifies the issuer that there is fraud, forgery, or another defect not apparent on the face of the documents.
 
 
 33
 Here, however, the California and the U.C.C. diverge. The U.C.C. provides that in the latter instance, a court may enjoin payment upon demonstration of fraud, forgery, or other defect. Significantly, the California legislature intentionally prohibited the injunction of payment under a properly demanded letter of credit by omitting from Sec. 5114 the language from the U.C.C. allowing injunctions. The legislative history explains why this provision was omitted:
 
 
 34
 By giving the courts power to enjoin the honor of drafts drawn upon documents which appear to be regular on their face, the Commissioners on Uniform State Laws do violence to one of the basic concepts of the letter of credit, to wit, that the letter of credit agreement is independent of the underlying commercial transaction.
 
 
 35
 Agnew, 548 F.Supp. at 1238 (quoting official comment to Cal.Comm.Code Sec. 5114 (West 1964)).
 
 
 36
 The only published California federal district court case discussing the subject has recognized the legislature's intent to prohibit injunctions of payments on letters of credit. Id. The Agnew court stated: "The California legislature could not have spoken more clearly.... [T]o enjoin the issuing banks from paying on the letters of credit would directly contradict the intent of the legislature and erode the certainty that should accompany letter of credit transactions." Id.
 
 
 37
 Thus, under California law, if Banco Continental presents Banque Indosuez with the two documents specified in LC 1459-SB (certification of payment demand by ENCI and statement from the ENCI Gerente General), Banque Indosuez may pay Banco Continental under the letter of credit. No evidence was presented to the district court that the documents were not presented as specified to Banque Indosuez. On appeal TMTI argues no evidence was presented to the district court showing that the Gerente General's statement was presented to Banque Indosuez, implying it was not. However, TMTI is the party alleging fraud and seeking the preliminary injunction. It was TMTI's burden to prove the specified conditions were not met.
 
 
 38
 TMTI also attempts to characterize the statement in LC 1459-SB that LC 1441-SB is null and void as a condition of payment. TMTI contends that Banco Continental's demand was improper because "rather than void Letter of Credit No. 1441-SB as required by Letter of Credit No. 1459-SB ..., Banco Continental persisted in attempting to remove the voiding ... as a condition." This argument fails for several reasons. First, Banco Continental was not involved in the transaction resulting in LC 1441-SB and therefore had no power to "null and void" it. Second, LC 1459-SB does not require Banco Continental to "null and void" LC 1441-SB; it simply declares the letter of credit null and void. Finally, LC 1459-SB does not require Banco Continental to present to Banque Indosuez any proof that LC 1441-SB is null and void; only the two documents described above must be presented.
 
 
 39
 Thus, the district court had sufficient evidence before it to find that there was nothing improper about the documentation presented by Banco Continental to Banque Indosuez.
 
 
 40
 TMTI next argues that Banco Continental's demand was fraudulent, because it knew or should have known that ENCI's demand on Banco Continental was fraudulent. TMTI claims Banco Continental should have known this because: (1) the underlying contract specified that the opening of an acceptable letter of credit by ENCI was a condition of shipment, (2) ENCI called on Banco Continental to pay at too early a date to determine whether TMTI had failed to perform because the first shipment could have been en route, and (3) the second shipment date had not arrived.
 
 
 41
 In the only case in this circuit discussing what showing of fraud would suffice to permit injunctive relief, the court concluded that "courts ... have refused to enjoin payment absent 'a clear showing of active intentional fraud' or 'evil intent,' as opposed to a dispute over performance of a contract." Wyle, 577 F.Supp. at 1162 (quoting KMW Int'l v. Chase Manhattan Bank, 606 F.2d 10, 16 (2d Cir.1979) and American Bell Int'l v. Islamic Republic of Iran, 474 F.Supp. 420, 425 (S.D.N.Y.1979).
 
 
 42
 As the district court found, TMTI did not show that Banco Continental knew of any intentional fraud by ENCI. Banco Continental had no duty to investigate the factual basis for ENCI's demand. Pubali Bank v. City Nat'l Bank, 676 F.2d 1326, 1329 (9th Cir.1982) (Pubali I ). The correspondence between TMTI and ENCI and MULTIFERT shows substantial disagreement about the shipping window dates. There is no evidence that Banco Continental knew or should have known any shipping dates.
 
 
 43
 TMTI also bases its argument that Banco Continental's demand was fraudulent on an alleged conspiracy between ENCI and Banco Continental to defraud TMTI in connection with Peru's financial crisis. TMTI relies on Wyle to demonstrate that California law allows injunctions in such an instance. However, Wyle is distinguishable. First, the Wyle court stated that while it declined to make a factual finding, substantial evidence existed "to support plaintiff's claims concerning an Iranian policy of demanding payment on letters of credit without regard to whether payment is justified on the facts underlying the guarantee arrangements." 577 F.Supp. at 1154. TMTI has not shown any such policy by the Peruvian government. As the district court noted, it would be unreasonable to infer a fraudulent pattern of calling on letters of credit orchestrated by the Peruvian government based on one such call, especially when a genuine contractual disagreement seems to exist.
 
 
 44
 Second, the Wyle court found that if it did not issue an injunction, the plaintiff would have no remedy available in the Iranian courts and no assets existed in the United States against which to enforce a judgment. Id. at 1165. As noted by the Fifth Circuit, the Iranian crisis presented a unique situation, prompting many courts to grant injunctions of payment on letters of credit demanded by Iranian entities because resort to Iranian courts would be futile. Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 473 (5th Cir.1985). However, in other situations where foreign courts provide even a potential legal remedy, injunctions are rarely issued because "sophisticated investors knowingly undertake such risks as political upheaval or contractual breach in return for the benefits to be reaped from international trade." Id. at 474. TMTI has not shown that it cannot get relief in a Peruvian court.
 
 
 45
 Finally, the district court noted that given the special facts in Wyle, Bank Melli, the letter of credit beneficiary, knew or had reason to know of the fraud. Wyle, 577 F.Supp. at 1163. As discussed above, no showing has been made that Banco Continental knew or should have known of any fraud.
 
 
 46
 TMTI's final argument is that even if California law prohibits the court from enjoining Banque Indosuez from paying on the letter of credit, it does not prohibit the court from enjoining Banco Continental from demanding payment. TMTI relies on two California court of appeal cases. However, this argument is flawed.
 
 
 47
 Given California's seemingly strong policy honoring letters of credit, it would be illogical to thwart it so easily by enjoining the beneficiary, not the issuer. Second, the cases on which TMTI relies are distinguishable. In Steinmeyer v. Warner Consol. Corp., 42 Cal.App.3d 515, 116 Cal.Rptr. 57 (1974), the court affirmed the issuance of a preliminary injunction against the beneficiary of a letter of credit. However, the party seeking the injunction and the beneficiary were the two parties involved in the underlying contract dispute. The court concluded that "as between Steinmeyer and Warner the letter of credit cannot be construed in isolation from the underlying agreement and the promissory note." 42 Cal.App.3d at 518, 116 Cal.Rptr. at 59. The court viewed Warner's seeking payment on the letter of credit as nothing more than a violation of the covenant of good faith and fair dealing implied in every contract. Id. at 519, 116 Cal.Rptr. at 60. Here, Banco Continental was not a party to the underlying contract. As discussed earlier, no evidence exists that Banco Continental was acting on ENCI's behalf to disrupt the contract.
 
 
 48
 The other case on which TMTI relies, Mitsui Mfrs. Bank v. Texas Commerce Bank-Fort Worth, 159 Cal.App.3d 1051, 206 Cal.Rptr. 218 (1984), is more troublesome. In Mitsui, the court reversed an order denying a preliminary injunction against the beneficiary of a letter of credit. In dicta, the court stated it should not make a difference that the beneficiary was also a party to the underlying contract, the distinguishing feature in Steinmeyer. 159 Cal.App.3d at 1058-59, 206 Cal.Rptr. at 222.
 
 
 49
 However, Mitsui is distinguishable. In Mitsui a specific condition for demanding payment on the letter of credit was that the beneficiary present a "beneficiary's signed statement stating that Craigmuir Limited has failed to meet its obligations to pay the face amount of loans drawn by themselves on beneficiary ... in connection with drilling of oil wells." 159 Cal.App.3d at 1054, 206 Cal.Rptr. at 219. Because the letter of credit made a specific reference to the underlying contract in establishing a condition for honoring a demand for payment, it was proper for the court to look at the underlying contract. The court found that the beneficiary knew the loans were not used for drilling oil wells, and therefore could not truthfully have made such a statement. Here, Banco Continental was not required to make a statement to Banque Indosuez regarding the underlying contract. It had only to present a statement from ENCI claiming that TMTI had breached the contract. No evidence indicates that Banco Continental knew or should have known the underlying contract terms or whether either party had breached them.
 
 
 50
 The facts present in Steinmeyer and Mitsui justifying an injunction against the beneficiary are not present here. Therefore, the district court correctly found that California law does not permit an injunction preventing Banco Continental from demanding payment under the letter of credit.
 
 
 51
 C. Merits of TMTI's Preliminary Injunction Motion
 
 
 52
 Because we agree with the district court's conclusion that California law prohibits it from issuing an injunction, it is unnecessary for this court to evaluate the merits of TMTI's motion.
 
 CONCLUSION
 
 53
 The district court properly applied California law. California law does not permit the issuance of an injunction in this letter of credit transaction.
 
 
 54
 AFFIRMED.
 
 
 
 [1]
 All dates given are in 1986
 
 
 [2]
 California Commercial Code Sec. 5114 provides:
 (1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. The issuer is not excused from honor of such a draft or demand by reason of an additional general term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it.
 (2) Unless otherwise agreed, when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (Section 7507) or of a certificated security (Section 8306) or is forged or fraudulent or there is fraud in the transaction:
 (a) The issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (Section 3302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (Section 7501) or a bona fide purchaser of a certificated security (Section 8302).
 (b) In all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents.
 (3) Unless otherwise agreed, an issuer which has duly honored a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit and to be put in effectively available funds not later than the day before maturity of any acceptance made under the credit.
 (West 1964 & Supp.1987).