GUAM FRESH, INC.; Pacific Produce Co.; Payless Markets; Crown Food Distributor; International Distributors, Inc.; Pacific World Enterprises; D.S. Corporation; and Quality Food Marketing, Inc., Plaintiffs–Appellants,

v.

Joseph F. ADA, Governor of Guam; Joaquin N. Naputi, Acting Director, Guam Department of Agriculture, Defendants–Appellees.

No. 87–2716.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1988.

Decided June 14, 1988.

Paul A. Lawlor, Moore, Ching, Boertzel & Lawlor, Agana, Guam, for plaintiffs-appellants.

Patrick Mason, Acting Deputy Atty. Gen., and Calvin E. Holloway, Sr., Agana, Guam, for defendants-appellees.

Before GOODWIN, SCHROEDER and POOLE, Circuit Judges.

POOLE, Circuit Judge:

Plaintiffs, importers of produce into Guam, filed suit in the district court to enjoin the Guam Department of Agriculture from inspecting produce imported from Hawaii and the continental United States and from seizing infested produce. Plaintiffs appeal from the denial of their motion for a preliminary injunction, claiming that Guam's laws concerning agricultural pests, plant disease and quarantine are preempted by Section 8 of the Plant Quarantine Act of 1912, as amended, 7 U.S.C. § 161 (1982) (the Act). We affirm.

## PROCEEDINGS BELOW

Plaintiffs filed this suit and obtained a temporary restraining order (TRO) on August 31, 1987. Defendants moved to modify the TRO on September 3, advising the court that their inspections were conducted pursuant to Guam law, not federal law. The court requested memoranda on the issue of preemption. After a hearing on the modification motion and the plaintiffs' motion for a preliminary injunction, the court ruled that there was no federal preemption, dissolved the TRO and denied the preliminary injunction. Order of Sept. 21, 1987. Since the authority for the seizures was a matter of local law, the district court ordered abstention *sua sponte*. Plaintiffs ap-

peal from the denial of their preliminary injunction motion. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) (1982).

## STANDARD OF REVIEW

 The grant or denial of a preliminary injunction motion lies within the discretion of the district court, and its order will be reversed only if the court relied on an erroneous legal premise or otherwise abused its discretion. *Chalk v. United States District Court*, 840 F.2d 701, 704 (9th Cir.1988). Here, the district court's order was based entirely on the legal conclusion that federal law did not preempt Guam's regulations concerning agricultural pests. Questions of law underlying a preliminary injunction motion are reviewed *de novo*. *Trans Meridian Trading, Inc. v. Empresa Nacional de Comercializacion de Insumos*, 829 F.2d 949, 953 (9th Cir. 1987).

## DISCUSSION

The test for federal preemption of territorial laws is the same as the test for preemption of the law of a state under the Supremacy Clause, U.S. Const., Art. VI, cl. 2. *Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.*, — U.S. —, 108 S.Ct. 1350, 1353, 99 L.Ed.2d 582 (1988). This test requires an analysis of the scope of preemptive intent underlying statutory provisions that impose federal regulation. *Id.*

 Our analysis of the preemptive intent of the Plant Quarantine Act begins with the Supreme Court's decision on March 1, 1926, in *Oregon–Washington R.R. & Nav. Co. v. State of Washington*, 270 U.S. 87, 46 S.Ct. 279, 70 L.Ed. 482 (1926), in which the Court held that the Act completely preempted the field of quarantine of plant diseases and pests in interstate commerce. *Id.* at 99, 46 S.Ct. at 282. The Court therefore invalidated a Washington state statute giving the Washington Director of Agriculture the power to establish and enforce a quarantine against plant diseases or pests. *Id.* at 102–03, 46 S.Ct. at 284.

Immediately following the *Oregon–Washington* decision, Congress enacted a joint resolution amending the Act, which was approved by President Coolidge on April 13, 1926. S.J.Res. 78, ch. 135, 44 Stat. 250 (1926). At issue is the construction of this amendment, which reads:

> *Provided,* That until the Secretary of Agriculture shall have made a determination that such a quarantine is necessary and has duly established the same with reference to any dangerous plant disease or insect infestation, as hereinabove provided, nothing in this chapter shall be construed to prevent any State, Territory, Insular Possession, or District from promulgating, enacting, and enforcing any quarantine, prohibiting or restricting the transportation of any class of nursery stock, plant, fruit, seed, or other product or article subject to the restrictions of this section, into or through such State, Territory, District, or portion thereof, from any other State, Territory, District, or portion thereof, when it shall be found, by the State, Territory, or District promulgating or enacting the same, that such dangerous plant disease or insect infestation exists in such other State, Territory, District, or portion thereof: *Provided further,* That the Secretary of Agriculture is authorized, whenever he deems such action advisable and necessary to carry out the purposes of this chapter, to cooperate with any State, Territory, or District, in connection with any quarantine, enacted or promulgated by such State, Territory, or District, as specified in the preceding proviso: *Provided further,* That any nursery stock, plant, fruit, seed, or other product or article, subject to the restrictions of this section, a quarantine with respect to which shall have been established by the Secretary of Agriculture under the provisions of this chapter shall, when transported to, into, or through any State, Territory, or District, in violation of such quarantine, be subject to the operation and effect of the laws of such State, Territory, or District, enacted in the exercise of its police powers, to the same extent and in the same manner as though

such nursery stock, plant, fruit, seed, or other product or article had been produced in such State, Territory, or District, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.

7 U.S.C. § 161 (1982). Plaintiffs construe the first proviso to mean that once the Secretary of Agriculture has adopted a quarantine with respect to a particular state or territory, all further state action with respect to products imported from that state or territory is preempted. Defendants, on the other hand, contend that the amendment restored to the states full police power to impose a quarantine on any articles not specifically interdicted by a federal quarantine.[1]

We believe the defendants' view is the more reasonable construction of the statute. "[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Isla Petroleum*, 108 S.Ct. at 1353 (citations omitted). However, the clear and manifest purpose of Congress, as indicated by the legislative history of the 1926 amendment, was to overturn the *Oregon–Washington* decision and restore the concurrent regulatory scheme which existed prior to that decision. For example, the House Report noted with approval that, prior to *Oregon–Washington*, the U.S. Department of Agriculture "advised and encouraged the placing of State quarantines" and "issued and administered its quarantines as to particular pests and diseases in the belief that the States might legally take similar action with reference to subjects not covered by a Federal quarantine." H.R.Rep. No. 782, 69th Cong., 1st Sess. 2 (1926). In the House debate, Representative Jones of Texas stated: "[t]he purpose of this measure is simply to permit the States to continue such regulations where they are not in conflict with the regulations of the United States Government or where the regula-

tions of the United States Government do not cover the particular plant or thing which the State laws undertake to cover." 67 Cong.Rec. 7053–54 (1926).

A Congressional intent to allow state regulation to co-exist with federal authority is also implicit in the second proviso of the amendment, which authorizes the Secretary to cooperate with those states which enact local quarantines. Similar provisions are found in related statutes aimed at controlling and eradicating plant and animal diseases and pests. For example, 7 U.S.C. § 450 (1982) authorizes the Secretary to cooperate with state departments of agriculture "[i]n order to avoid duplication of functions, facilities, and personnel, and to attain closer coordination and greater effectiveness and economy in administration of Federal and State laws and regulations." *See also* 7 U.S.C. § 147a (1982). Such provisions are inconsistent with the argument that federal law displaces state regulation in this area; rather, it is clear that Congress contemplated a statutory scheme in which state regulation *supplements* federal law, by restricting the entry of pests of peculiarly local concern. *Cf. Kasch's Garden Centers and Nurseries v. Department of Agriculture*, 85 Or.App. 377, 381, 736 P.2d 609, 611 ("§ 147a expressly contemplates continued state participation in plant pest control."), *review denied*, 303 Or. 699, 740 P.2d 1212 (1987).

Read in the light of the legislative history and these other statutory provisions, it is clear that the 1926 amendment divested the Plant Quarantine Act of its preemptive effect. This construction serves the central purpose of the statute, which is to prevent the spread of plant pests and diseases. If states are not free to prevent infestations from being turned away at their borders, many pests and diseases will spread to areas where they were not formerly known. In this context, it cannot be said that the provisions of the Guam Agri-

---

1. Defendants' position is supported by the only reported decision our research has disclosed construing the meaning and effect of the 1926 amendment. *See Hinkle v. Railway Express*

*Agency*, 242 Ala. 374, 6 So.2d 417, 420 (1942) ("In our opinion, the purpose of the Congress in the enactment of the 1926 amendment was to reinvest the states with their police power.").

cultural Law, which are designed to serve the same purpose, are in conflict with the federal scheme.[2]

Plaintiffs urge us to infer a preemptive intent from 7 C.F.R. § 318.13a (1988), which specifically exempts imports into Guam from the federal quarantine covering Hawaiian fruits and vegetables. We recognize that, as a general rule, a specific regulatory exemption will ordinarily raise an inference of preemption. *See Isla Petroleum,* 108 S.Ct. at 1355 ("Where a comprehensive federal scheme intentionally leaves a portion of the regulated field without controls, then the pre-emptive inference can be drawn.") (emphasis omitted). Indeed, the *Oregon–Washington* decision was based in part on this rationale. *See Oregon–Washington,* 270 U.S. at 102–03, 46 S.Ct. at 284 ("When [the Secretary] does not act, it must be presumed that it is not necessary."). However, by enacting an amendment to overturn that decision, Congress has negated the usual inference. In this context, when the Secretary does not act it can only be presumed that *federal* regulation is not necessary; states remain free to determine whether more localized action is needed.[3]

The decision of the district court is AFFIRMED.

---

**2.** It is conceivable that a state might enact a quarantine which was actually a sham or subterfuge, designed solely to burden interstate commerce and give an unfair economic advantage to local agricultural products. Plaintiffs have not argued that such is the case here, and we do not decide whether such a regulation would be invalid under the Commerce Clause or the Supremacy Clause.

**3.** We also reject plaintiffs' argument that the first proviso of the amendment requires that Guam enact statutes or regulations limiting its quarantine to specific pests and states of origin. The provisions for inspection of incoming produce are sufficient to satisfy the statutory condition that an infestation be "found" to exist.