[No. 8535.  In Bank. — August 2, 1886.]

PIERRE ALBERT LAFARGUE ET AL., RESPONDENTS, v. HENRY D. HARRISON ET AL., APPELLANTS.

LETTER OF CREDIT — LIABILITY OF DRAWER — GUARANTY OF CREDIT TO THIRD PERSON. — In 1877, John Mel & Sons, merchants of San Francisco, having a branch house at Bordeaux, France, and doing their banking business with the plaintiffs, obtained from the defendants, then doing business under the name of Falkner, Bell & Co., the following letter of credit: —

"SAN FRANCISCO, Sept. 20, 1877.

"THE MERCHANTS' BANKING COMPANY OF LONDON (LIMITED), 112 CANNON STREET, LONDON, — Dear Sirs: At the request of Messrs. John Mel & Sons of this city, we hereby authorize Messrs. A. Lafargue. & Co., of Bordeaux, to draw on you at sixty days' sight for our account to the amount of three thousand pounds sterling (£3,000).

"All drafts must be drawn at Bordeaux, and be accompanied by due advice. This credit to be in force for twelve months, from 31st October, 1877, to 31st October, 1878. We are, dear sir, yours faithfully,

"FALKNER, BELL & Co."

The plaintiffs and the bank were duly advised of the issuance of the letter, which was deposited by Mel & Sons with the plaintiffs as security for advances that might be made to them by the latter. During the period in which the letter of credit was to remain in force, and upon the faith and credit thereof, the plaintiffs advanced about nineteen thousand

dollars to Mel & Sons, of which a balance of $13,441.54 remained unpaid. On the 10th of October, 1878, they drew a bill of exchange for three thousand pounds on the Merchants' Banking Company at sixty days' sight, which they requested that bank to pay, and charge according to the terms of the letter of credit. The draft was accompanied by a letter of advice and notice, and was duly presented for acceptance and payment. The bank refused to accept or pay it, whereupon it was protested for non-acceptance and non-payment. The action was brought on the letter of credit to recover the amount of the draft. *Held,* that the defendants were liable, as the letter of credit was a guaranty by them of the credit of Mel & Sons during the time and for the amount therein specified, and of the acceptance and payment by the Merchants' Banking Company of all drafts drawn by the plaintiffs in conformity with the letter.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of Commissioner Foote.

*Wilson & Wilson,* for Appellants.

The letter of credit was special, and created no privity of contract between the plaintiffs and the defendants. (Edwards on Bills and Notes, 239; Robinson's Practice, 284; Daniel on Negotiable Instruments, 706–714; *Taylor v. Wetmore,* 10 Ohio, 494; *Birckhead* v. *Brown,* 5 Hill, 634; *Union Bank* v. *Costa's Ex'rs,* 3 N. Y. 214; *Robbins* v. *Bingham,* 4 Johns. 477; *Walsh* v. *Bailie,* 10 Johns. 180; *Nat. Bank* v. *Grand Lodge,* 98 U. S. 123.)

*McAllister & Bergin,* for Respondents.

The defendants are liable upon the letter of credit. (*Lawrason* v. *Mason,* 3 Cranch, 492; *Dorland* v. *Mulhollan,* 10 Ohio St. 192; *Lonsdale* v. *Lafayette Bank,* 18 Ohio, 126; *Russell* v. *Wiggin,* 2 Story, 213; *Carnegie* v. *Morrison,* 2 Met. 381; *Barney* v. *Newcomb,* 9 Cush. 46; *Scott* v. *Pilkington,* 15 Abb. Pr. 284; *Monroe* v. *Pilkington,* 14 How. Pr. 250; *Union Bank* v. *Coster,* 1 Sand. 563; S. C., 3 N. Y. 214; *In re Agra and Masterman Bank,* L. R. 2 Ch. 389.)

The COURT—For the reasons given in the opinion filed herein December 30, 1885, judgment and order affirmed.

. THORNTON, J., dissented.

The following is the opinion above referred to, rendered in Bank.

FOOTE, C. — From the record in this action, it appears that in the year 1877, John Mel & Sons, being engaged in a general commission business in the city of San Francisco, having a branch house in the city of Bordeaux, France, and doing their banking business with Lafargue & Co., the plaintiffs in this action, obtained from the defendants, then doing business under the name and style of Falkner, Bell & Co., a letter of credit as follows:—

"SAN FRANCISCO, Sept. 20, 1877.

"THE MERCHANTS' BANKING COMPANY OF LONDON (LIMITED), 112 CANNON STREET, LONDON,—*Dear Sirs:* At the request of Messrs. John Mel & Sons of this city, we hereby authorize Messrs. A. Lafargue & Co., of Bordeaux, to draw on you at sixty days' sight for our account to the amount of three thousand pounds sterling (£3,000).

"All drafts must be drawn at Bordeaux, and be accompanied by due advice. This credit to be in force for twelve months, from 31st October, 1877, to 31st October, 1878. We are, dear sir, yours faithfully,

"FALKNER, BELL & Co."

Of the issuance thereof, Lafargue & Co. and the bank above mentioned were duly advised. Mel & Sons deposited the letter in the bank of Lafargue & Co. as a guaranty or security for advances that might be made by that bank to them, and upon the faith and credit of such guaranty, and of another on the part of some ladies, the relatives of the Mels, which was also at the same time so deposited, Lafargue & Co., between the times mentioned in the letter of credit as the period during which it was to remain in full force and effect, made advances to Mel

& Sons in the sum of 99,645 francs and 60 centimes, equivalent to the sum of $19,231.53 of the money of the United States of America, of which sum the other guarantors above mentioned paid plaintiffs .30,000 francs, leaving unpaid 69,645 francs and 60 centimes, equivalent to the sum of $13,441.54 in money of the United States.

On the tenth day of October, 1878, on the faith of the said letter of credit, and for liabilities contemplated by the parties at the time of the issuance thereof, the plaintiffs drew a bill of exchange, which, translated into the English language, reads as follows:—

"B. P. £3,000.            BORDEAUX, Oct. 10, 1878.

"At sixty days' sight, pay on the single of exchange to our order the sum of three thousand pounds sterling, value received by us, which charge according to the letter of credit of Messrs. Falkner, Bell & Co. dated San Francisco, September 20, 1877.

(Signed)                "A. LAFARGUE & Co.

"The Merchants' Banking Co. of London (Limited), 112 Cannon Street, London."

This draft the pleadings admit to have been accompanied by a letter of advice and notice.   It was presented on the 14th of October, 1878, to the London bank for acceptance, which was refused.   On the 16th of December, 1878, it was presented to that bank for payment, which was also refused.   Thereupon it was protested for both non-acceptance and non-payment.   Lafargue & Co. brought this action to recover from the defendants the amount of that draft, basing their demand upon the obligations imposed upon Falkner, Bell & Co. by virtue of the terms of the letter of credit.

Judgment for the amount claimed was rendered in favor of the plaintiffs; the defendants entered their motion for a new trial, and it was denied.   From the order made in the premises, and the judgment, the defendants appealed.

Letters of credit are general or special, and whether

one partakes of the characteristics of the former or the latter class depends upon the reasonable construction to be placed upon the language specially employed therein.

Daniel on Negotiable Instruments, at page 666, vol. 2, says:—

"A letter of credit may be defined to be a letter of request whereby one person requests some other person to advance money or give credit to a third person, and promises that he will repay or guarantee the same to the person making the advancement.

"It is called a general letter of credit when it is addressed to all persons in general, requesting such advance to a third, and a special letter of credit when addressed to a particular person by name.

"When addressed to all persons, it is in effect a request made to any person to whom it may be presented, and any one may accept and act upon the proposition contained in it, and when he does so, that which before was indefinite and at large becomes definite and fixed. A contract immediately springs up between the person making the advancement and the writer of the letter, and it is thenceforward the same thing in legal effect as though the name of the former had been inserted in the letter in the beginning." (*Birchhead* v. *Brown*, 5 Hill, 643.)

And the same legal effect follows action by the person to whom a special letter of credit is addressed. He has the right to act upon it, and when he accepts the letter placed in his hands by the person for whose benefit it was written, and gives him credit in compliance with it, there springs from the letter and its acceptance a distinct contract, which is auxiliary to the principal contract, between the person for whose benefit the letter was written and the person to whom it was addressed, which is binding upon the writer of the letter. And this writer is upon the default of the debtor liable to those who gave credit in accordance with its terms. (Civ. Code, sec. 2860.)

It is contended by counsel for the defendants that the one in hand is a special letter of credit, and that no privity exists between the writers thereof and the plaintiffs.

The question, then, to be determined is, whether or not the proposal or proposition contained in that letter was intended to be made, or, what is the same thing in legal effect, could from its verbiage reasonably be construed to be intended to be made, to Lafargue & Co.

"To construe the words of such instrument with wise and technical care would not only defeat the intentions of the parties, but render them too unsafe a basis to rely on for extensive credits, so often sought in the present active business of commerce throughout the world. (*Lawrence* v. *McColmont*, 2 How. 426.)

We must look, then, at the letter itself, and give to its terms and the language employed a reasonable interpretation, according to the intent of the parties as disclosed by the instrument, read in the light of surrounding circumstances and the purposes for which it was made. If there is anything ambiguous in it, it should be taken most strongly against the parties who have induced Lafargue & Co. to act upon and give credit to their supposed intent. (*Belloni* v. *Freeborn*, 63 N. Y. 383.)

What was the proposition fairly deducible from the language of that letter? It is this:—

We guarantee the credit of Mel & Sons for twelve months, from October 31, 1877, until October 31, 1878, to the amount of three thousand pounds sterling, and for that amount we authorize Lafargue & Co. at Bordeaux to draw on the Merchants' Bank of London (Limited) for our account by sixty days' sight draft or drafts, the same to be drawn at Bordeaux.

In other words, Falkner, Bell & Co. said to Lafargue & Co.: Give Mel & Sons credit in your bank to the extent of three thousand pounds, and draw for it draft or drafts at Bordeaux upon the Merchants' Bank of London (Lim-

o

ited), and we will guarantee their acceptance and payment at that bank, provided they are drawn at sixty days' sight, are accompanied with due advice and notice to that bank, and are drawn between the 31st of October, 1877, and the same date in 1878.

This proposition thus made and accepted by Lafargue & Co. was, we think, sufficient to create a contract between the writers and Lafargue & Co.

"If A says to B, advance so much money to C, and I will repay you," it is an original promise, and if the money is paid upon the faith of it, it has been always held an obligatory promise. (*Townsley* v. *Sumrall*, 2 Pet. 182.)

Where the evidence showed the credit to have been given upon the faith of a letter by the person for whom the letter was intended, Chief Justice Marshall said:—

"The writing was certainly intended by the defendants to give a credit to another. The defendants are bound by every principle of moral rectitude and good faith to fulfill the expectations which they thus raised, and which induced the plaintiffs to part with their property." (*Lawrason* v. *Mason*, 3 Cranch, 492.)

If one of two must suffer, it should be the one from whose act the injury results.

If Lafargue & Co., acting in good faith, had a right reasonably to infer from the language of Falkner, Bell & Co.'s letter that they were authorized to give credit to Mel & Sons, as they did, and that the drafts specified in that instrument would be paid by the London bank, then common justice requires the defendants should make good their guaranty; and since by their act in revoking the letter of credit the bank failed to pay the plaintiffs' draft, they should assume the place of the bank and pay it.

There is no case which we have had cited to us, or which we have been enabled to find, which in all respects is similar to the one under consideration. But that

which most closely resembles it is *Carnegie* v. *Morrison*, 2 Met. 381.

There a Boston merchant was indebted to some merchants in Gottenburg, Sweden, and procured from the agent in Boston of a banking-house in London a letter of credit as follows:—

"BOSTON, March 4, 1837.

"MESSRS. MORRISON, CRYDER & Co., LONDON:—"Mr. John Bradford of this city having requested that a credit may be opened with you for his account in favor of Messrs. D. Carnegie & Co. of Gottenburg for three thousand pounds sterling, I have assured him that the same will be accorded by you on the usual terms and conditions. Respectfully, your obedient servant,

"FRANCIS J. OLIVER."

The London bankers were advised of the issuance of the letter, and that it would be forwarded to Carnegie & Co.; and it was forwarded to them by the party in whose favor it was written, and he requested them "to value for the amount of three thousand pounds at ninety days' sight, and pass the same to his credit."

Relying upon this letter of credit, Carnegie & Co., and in compliance with its terms, drew a bill on the London bankers, which was presented for acceptance and payment, and both refused. Carnegie & Co. then instituted an action to recover the amount of that draft, basing their right of recovery on the letter of credit.

The defendants alleged that they were under no obligation to pay Carnegie & Co.; that no contract existed between them.

Chief Justice Shaw said upon that point, among other things:—

"The objection to such an action and the grounds of this defense are, that the immediate parties to the transaction were Bradford (the person in whose favor the letter was written) on the one side, and the defendants on the other; that to this transaction the plaintiffs were

strangers, and that, as Bradford acquired some right under it, and had a remedy upon it against the defendants, their contract must be deemed to be made with him, and not with the plaintiffs. But this position presupposes that the same instrument may not constitute a contract between the original parties, and also between one or both of them and others who may subsequently assent to and become interested in its execution,—an assumption quite too broad and unlimited, which the law does not warrant. In a common bill of exchange, the drawer contracts with the payee that the drawee will accept the bill; with the drawee, that if he does accept and pay the bill, he, the drawer, will allow the amount in account if he has funds in the drawee's hands; otherwise, that he will reimburse him the amount thus paid. He also contracts with any person who may become indorsee that he will pay him the amount if the drawee does not accept and pay the bill. The law creates the privity. So in the familiar case of money had and received, if A deposits money with B to the use of C, the latter may have an action against B, though they are in fact strangers. But if C, not choosing to look to B as his debtor, calls upon A to pay him notwithstanding such deposit (as he may), and A pays him, A shall have an action against B to recover back the money deposited if not repaid on notice and demand. The law, operating upon the act of the parties, creates the duty, establishes the privity, and implies the promise and obligation on which the action is founded. (*Hall* v. *Marston*, 17 Mass. 579.)"

On page 403 of 2 Metcalf the learned judge continues as follows:—

"The court are of opinion that the promise of the defendants made by the letter of credit in the present case comes within the principle of the cases cited. Bradford was indebted to the plaintiffs, and was desirous of paying them; and he must resort to some mode of remit-

tance.   He had funds, either in cash or credit, with the
defendants, and entered into a contract with them to
pay a sum of money for him to the plaintiffs.   And
upon the faith of that undertaking, he forebore to adopt
other measures to pay the plaintiffs' debt.   He gave the
plaintiffs notice of what he had done, and sent them the
instrument as authentic evidence of the fact.   They as-
sented to and affirmed it, as an act done in their behalf,
and gave the defendants notice thereof, and conformably
to the terms of the letter of credit, drew their bills on
the defendants.   The refusal to accept was a breach of
the promise thus made, and in the event that happened
(the insolvency of Bradford), the plaintiffs lost their debt.
It would be in vain to say that this promise was not
made for the benefit or (according to the terms of some
of the cases) for the *interest* of the plaintiffs.   The result
shows that by a compliance with the plain, literal terms
of their promise on the part of the defendants the plain-
tiffs would have received their debt.   By a refusal to
perform that promise they have lost it.   They are there-
fore damnified to the full amount of the sum for which
the credit was given."

. To much the same effect is the reasoning of the courts
in *Russell* v. *Wiggin*, 2 Story, 213; *Lonsdale* v. *Lafayette
Bank of Cincinnati*, 18 Ohio, 126; *Barney* v. *Newcomb*, 9
Cush. 59; *Scott* v. *Pilkington*, 15 Abb. Pr. 281.

We have examined with great care, and much admi-
ration for their research, perspicuity of expression, and
strength of argument, the various briefs of the distin-
guished counsel in this cause.

We rise from their study profoundly impressed with
the belief that the plaintiffs, from the terms of the letter
of credit under consideration, had a legal right to expect
that the drafts drawn by them on the London bank
would be paid by that bank, or that this failing, the de-
fendants must make good to them the loss thus incurred,
as they had promised.

"By a refusal to perform that promise," on the part of the defendants, the plaintiffs lost their debt.

"They are therefore damnified to the full amount of the sum for which the credit was given."

We perceive no prejudicial error in the record, and the judgment and order should be affirmed.

SEARLS, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.