*1188
 
 Opinion
 

 ORTEGA, J.
 

 We hold that a beneficiary’s interest in an executory letter of credit is not property of the beneficiary subject to attachment by a party in other litigation. We affirm the judgment for defendant.
 

 Facts
 

 From late 1989 through early 1990, several American contractors disassembled a machine in South Carolina and shipped it to South Korea, where they reassembled and repaired it for Hyundai Heavy Industries, Co., Ltd. Plaintiff Studwell, Incorporated, a California corporation located in Los Angeles, worked on this project under contract with Pacific Economic Development Corp. (PED), which had a contract with Hyundai. PED, doing business as CRSN Machine Tools Company, is a California corporation based in Carson.
 

 Hyundai arranged to pay PED for the machine through a letter of credit. Upon Hyundai’s application, Banque Paribas Seoul issued an irrevocable documentary credit for $2.8 million in favor of PED on August 11, 1988. The letter of credit stated that it was to be governed by the provisions of the Uniform Customs and Practice for Documentary Credits (1983 rev.) International Chamber of Commerce, Publication No. 400 (UCP-ICC).
 

 The credit was to be available in stages upon presentation of specified documents, such as bills of lading, packing lists, performance bonds, and Hyundai’s acceptance certificate. After PED had drawn down all but $280,000 under the letter of credit, PED assigned its right to the remaining proceeds to the Los Angeles office of defendant Korean Exchange Bank (the bank), as collateral for certain performance bonds required by the letter of credit. After the bank took possession of the original letter of credit, it issued the bonds.
 

 Studwell, having partially performed its work on the machine, sought to be paid under its contract with PED. Studwell sued PED for payment and obtained a right to an attachment order against PED’s property in the sum of $160,000. Contending the letter of credit was subject to the attachment order, Studwell served a writ of attachment on the bank on November 2, 1989. Although the bank turned over $226.94 from PED’s account, it refused to deliver the letter of credit to the levying officer. In its memorandum of garnishee, the bank said it had been assigned the letter of credit on October 18 and April 6, 1988, as collateral to secure $315,000 in performance bonds.
 

 
 *1189
 
 Apparently without Studwell’s knowledge, FED drew down additional sums of $140,000 and $124,000 under the letter of credit on March 2 and July 19, 1990, respectively. (Hyundai had signed the acceptance certificate on June 15, 1990.) In both instances, the bank had sent a negotiation advice to Banque Paribas, which transferred the funds to the bank. The bank had retained $80,000 and $64,000, respectively, for its fees, commission, and loan repayments, and remitted $60,000 and $120,000, respectively, to FED.
 

 On September 3, 1992, Studwell served on the bank a writ of execution seeking all sums due FED under the letter of credit. On July 5, 1993, Studwell allegedly discovered the March 2 and July 19, 1990, draws under the letter of credit. On June 15, 1994, Studwell sued the bank, contending it had released funds secured by Studwell’s attachment and execution liens in alleged violation of Code of Civil Procedure section 701.010.
 
 [1]
 
 Studwell sought $180,000 in compensatory damages with interest and attorney fees.
 

 Studwell tried its case against the bank to the court. At the close of Studwell’s evidence, the bank moved for judgment (§631.8). The court granted the motion and entered judgment for the bank. This appeal followed.
 

 Issues
 

 Studwell contends (I) an executory letter of credit issued in favor of a corporate beneficiary is subject to attachment; (II) the trial court erred by entering judgment for the bank; and (III) the bank should have paid the excess proceeds from the March 2 and July 19, 1990, draws to Studwell, not FED.
 

 
 *1190
 
 Discussion
 

 I
 

 For reasons that follow, we hold a beneficiary’s interest in an executory negotiable letter of credit is not property of the beneficiary subject to attachment by a party in other litigation.
 

 Section 487.010, subdivision (a) provides that, “. . . all corporate property for which a method of levy is provided by Article 2 (commencing with Section 488.300) of Chapter 8 [of title 6.5 on Attachment]” is subject to attachment. All property not subject to attachment under section 487.010 is exempt from attachment. (§ 487.020, subd. (d).) Also, property exempt from enforcement of a money judgment is exempt from attachment. (§ 487.020, subd. (a).) Accordingly, we disagree with Studwell’s blanket assertion that “[tjhere is no property of a corporate defendant that is exempt from attachment. ...”
 

 A.
 
 No Method of Levy Against Executory Letters of Credit
 

 As relevant, article 2 of chapter 8 of title 6.5 provides for the attachment of tangible personal property in the possession or control of a third party. (§ 488.345.) Studwell contends executory letters of credit fall within the definition of tangible personal property found in section 481.225, which reads: “ ‘Tangible personal property’ includes chattel paper, documents of title,
 
 instruments,
 
 securities, and money.” (Italics added.) Studwell points out that “instruments” are subject to attachment under section 488.440, pursuant to the method described in section 700.110. Studwell thus concludes that executory letters of credit are “instruments” subject to attachment under sections 488.440 and 700.110.
 

 Letters of credit are governed by division 5 of the California Uniform Commercial Code (Division 5), which says nothing about letters of credit being instruments. Former Division 5 was repealed in 1996 (Stats. 1996, ch. 176), but remains applicable to letters of credit, such as the one here, issued before the effective date of revised Division 5. Former Division 5 section 5103 defines a letter of credit as a bank’s “engagement” to honor drafts or other demands for payment upon compliance with the conditions specified in the letter of credit. (Rev. Div. 5, Cal. U. Com. Code, § 5102, subd. (a)(10) defines a letter of credit as a bank’s “undertaking.”) It does not define letters of credit as instruments, which are covered in another division of the California Uniform Commercial Code.
 

 Turning to the attachment statute, we find no support for Studwell’s contention that letters of credit are subject to attachment as instruments. The
 
 *1191
 
 attachment statute defines “‘instrument’” in section 481.117 by adopting California Uniform Commercial Code section 9105, subdivision (l)(i), which states: “ ‘Instrument’ means a negotiable instrument (defined in [Cal. U. Com. Code, §] 3104) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment. The term does not include investment property.” Studwell concedes that executory letters of credit are neither negotiable instruments nor certificated securities, but contends they are writings which evidence a right to payment and are of a type which, in the ordinary course of business, are transferred by delivery with any necessary endorsement or assignment. We conclude otherwise.
 

 By its terms, this executory letter of credit was not transferable. Article 54(b) of the UCP-ICC provides that a letter of credit is transferable only if it is expressly designated as such by the issuing bank.
 
 [2]
 
 Here, there was no such designation. Accordingly, the letter of credit was assignable but not transferable. (UCP-ICC, art. 55.)
 
 [3]
 

 
 *1192
 
 The difference between transferring a letter of credit and assigning its proceeds is that “[a] transfer effectuates a more complete change. The transferee is effectively substituted for the original beneficiary. After transfer, it is the transferee who must present the draft and documentation to cause payment. Such transfer may be made to a new substituted beneficiary only if the letter of credit ‘is expressly designated as “transferable” by the issuing bank.’ UCP-ICC Article 54(b).... An assignment of proceeds, by contrast, changes only the party entitled to receive payment of the proceeds. In spite of assignment, only the named beneficiary may draw the draft in favor of the assignee. Such assignments are commonplace. Beneficiaries of letters of credit commonly borrow from ‘negotiating banks’ against assignment of the proceeds of letters of credit. It is a conventional financing device for beneficiaries of letters of credit to preserve liquidity by borrowing from ‘negotiating banks’ against assignment of the proceeds. The negotiating bank thus becomes entitled to collect the proceeds when the beneficiary has complied with the obligations of the letter of credit. [Citations.] Such assignment of proceeds may be made regardless whether the credit provides on its face for‘transferability.’UCP-ICC Article 55 . . . .”
 
 (Algemene Bank
 
 v.
 
 Soysen Tarim Urunleri Dis Ticaret
 
 (S.D.N.Y. 1990) 748 F.Supp. 177, 182.)
 

 In addition to being nontransferable, the letter of credit in this case evidenced only a
 
 contingent
 
 right to payment. At the time of levy, the letter of credit still required the presentation of specified documents, such as performance bonds and Hyundai’s acceptance certificate, before the remaining funds would be released. In these ways, an executory letter of credit is distinguishable from an “instrument” as defined by California Uniform Commercial Code section 9105, subdivision (l)(i).
 

 Studwell’s reliance upon
 
 Lumbermans Acceptance Co.
 
 v.
 
 Security Pacific Nat. Bank
 
 (1978) 86 Cal.App.3d 175 [150 Cal.Rptr. 69] and
 
 Lafargue
 
 v.
 
 Harrison
 
 (1886) 70 Cal. 380 [11 P. 636] is misplaced. Those cases did not hold that letters of credit are “instruments” as defined by California Uniform Commercial Code section 9105, subdivision (l)(i). While in
 
 Lumbermans,
 
 the court casually referred to letters of credit as “commercial instrument[s]”
 
 (Lumbermans Acceptance Co.
 
 v.
 
 Security Pacific Nat. Bank, supra,
 
 86 Cal.App.3d at p. 178), this signified nothing more than that letters of credits are commercial documents. The
 
 Lafargue
 
 decision did not even address the issue.
 

 Executory letters of credit are unique commercial documents. They do “not comply with the requisites of a negotiable instrument under section 3-104(1) of the [Uniform Commercial] Code. [They are] not payable to
 
 *1193
 
 order or bearer, and [they are] conditional. [H In short, a letter of credit is a letter of credit. As Bishop Butler once said, ‘Everything is what it is and not another thing.’ ” (3 White & Summers, Uniform Commercial Code (4th ed. 1995) § 26-2, p. 117, fn. omitted.)
 

 Because executory letters of credit are not “instruments” as defined by California Uniform Commercial Code section 9105, subdivision (l)(i), we conclude they are not tangible personal property as defined by section 481.225. Because no other provisions in article 2, chapter 8, of title 6.5 arguably would apply to letters of credit, we find no method of levy exists to attach executory letters of credit.
 

 Studwell’s references to sections 488.600, subdivision (a) (located in article 4, chapter 8 of title 6.5 on attachment) and 701.040, subdivision (b) (located in article 5, chapter 3, division 2 of title 9 on enforcement of judgments) are not helpful to its position. When the writ of attachment was served, FED had not presented the necessary documents to draw against the remaining available credit. Accordingly, at the time of levy, the bank had only a contingent interest in the remaining credit, and it was uncertain whether any excess proceeds would be available to FED. Due to the uncertainty of the bank’s interest, there was no property in existence at the time of levy to which the lien attached. “It is the general rule that an attaching creditor, seeking to subject the property of a debtor to the payment of his debt, obtains a lien only upon the title or interest which the debtor has in the particular property at the time of levy.”
 
 (Kinnison
 
 v.
 
 Guaranty Liquidating Corp.
 
 (1941) 18 Cal.2d 256, 259 [115 P.2d 450].)
 

 Our determination is consistent with those of other jurisdictions that have considered the issue. (See, e.g.,
 
 Supreme Mdse.
 
 v.
 
 Chemical Bank
 
 (1987) 70 N.Y.2d 344 [520 N.Y.S.2d 734, 514 N.E.2d 1358] [beneficiary’s interest in executory letter of credit is not attachable];
 
 Union Planters Nat. Bank
 
 v.
 
 World Energy Systems
 
 (6th Cir. 1987) 816 F.2d 1092 [until conforming documents are presented to and accepted by issuing bank, the beneficiary’s assignee has no attachable interest in the proceeds of the letter of credit];
 
 [4]
 

 Sisalcords Do Brazil, Ltd.
 
 v.
 
 Fiacao Brasileira De Sisal, S.A.
 
 (5th Cir. 1971) 450 F.2d 419 [no writ of attachment may be enforced against an issuing bank to garnish the beneficiary’s executory interest in a letter of credit];
 
 Algemene Bank
 
 v.
 
 Soysen Tarim Urunleri Dis Ticaret, supra,
 
 748
 
 *1194
 
 F.Supp. at p. 183, fh. 9 [creditor has only a narrow window during which to attach proceeds of letter of credit assigned to a third party—the attachment must occur after the beneficiary produces the documents, but before the beneficiary has notified the issuer of an assignment of proceeds];
 
 Diakan Love, S.A.
 
 v.
 
 Al-Haddad Bros. Enterprises
 
 (S.D.N.Y. 1984) 584 F.Supp. 782 [beneficiary’s executory interest in a letter of credit is not attachable].)
 
 [5]
 

 B.
 
 Property Exempt From Enforcement of a Money Judgment, Is Exempt From Attachment
 

 If property is exempt from enforcement of a money judgment, it is likewise exempt from attachment. (§ 487.020, subd. (a).) The bank contends executory letters of credit are exempt from enforcement of a money judgment (and, hence, from attachment) because they are contingent and uncertain obligations. (Citing
 
 In re Marriage of Williams
 
 (1985) 163 Cal.App.3d 753 [209 Cal.Rptr. 827] [pension benefits are contingent and uncertain and cannot be garnished until they are due and payable];
 
 First Central Coast Bank v. Cuesta Tit. Guarantee Co.
 
 (1983) 143 Cal.App.3d 12 [191 Cal.Rptr. 433] [escrow funds cannot be garnished to recover broker’s commission until contingencies are lifted]; and
 
 Dawson
 
 v.
 
 Bank of America
 
 (1950) 100 Cal.App.2d 305 [223 P.2d 280] [contingent debt is not subject to garnishment]; see also § 699.720, subd. (a)(9) [writ of execution unavailable against a contingent remainder, executory interest, or other interest in property that is not vested].)
 

 Studwell, on the other hand, contends contingent obligations may be garnished under section 701.010, subdivision (b)(2)(B) (an enforcement of judgment statute made applicable to attachment liens under section 488.600). That subdivision requires a third person in possession or control of property levied upon, to the extent he does not deny the obligation levied upon or claim priority over the attachment lien, to pay future amounts that become due and payable to the debtor during the period of the lien. The subdivision, however, says nothing about contingent interests such as the bank’s contingent right to payment under an executory letter of credit.
 

 Studwell also contends the rule exempting contingent and uncertain obligations from enforcement of judgment was repealed by the 1982 enactment
 
 *1195
 
 of section 709.020 (located in article 10, chapter 6, division 2 of title 9 on enforcement of judgments), which took effect July 1, 1983. That section provides: “The judgment creditor may apply to the court on noticed motion for an order applying to the satisfaction of a money judgment a contingent remainder, executory interest, or other interest of the judgment debtor in property that is not vested in the judgment debtor. The interest of the judgment debtor may be applied to the satisfaction of the money judgment by such means as the court, in its discretion, determines are proper to protect the interests of both the judgment debtor and judgment creditor, including but not limited to the imposition of a lien on or the sale of the judgment debtor’s interest.”
 

 Section 709.020, however, does not provide a method of levy against corporate property and creates no right to attach executory letters of credit under title 6.5. Accordingly, Stud well’s reliance upon section 709.020 to enforce the writ of attachment against the executory letter of credit in the bank’s possession is misplaced.
 

 II
 

 Studwell contends the trial court erred by entering judgment for the bank. Citing
 
 Brunskill
 
 v.
 
 Stutman
 
 (1960) 186 Cal.App.2d 97 [8 Cal.Rptr. 910], Studwell states
 
 “Brunskill
 
 also specifically ruled that substantial performance of a contract is enough to render the debt subject to garnishment. In this case, it is undisputed that at the time of attachment, the contract between [FED] and Hyundai. . . was substantially completed and that there had been substantial performance in the payments made under the letter of credit in that almost 90% of the money had been paid to [FED] on the letter of credit and Hyundai ... at the time of attachment was preparing paperwork to release the balance owed on the letter of credit which it solely controlled and the amount paid out could be ascertained in the future.”
 

 The rule of independence which applies to letters of credit refutes Stud-well’s contention. As one court aptly stated: “We reject Texas/Hemmert’s attempt to focus this court’s attention on the underlying sales contract. The [document] that is relevant to our inquiry is not the [underlying] sales contract . . . , but the letter of credit itself. A letter of credit is a[n undertaking] separate and distinct from the underlying sales contract. [Citation.] Regardless of the status of the underlying sales contract, until the conforming documents were presented to and accepted by [the issuing bank], the letter of credit remained wholly executory and [the beneficiary] had no entitlement to the proceeds thereunder. Therefore, the writ of . . . attachment served prior to execution of the letter of credit was ineffective and
 
 *1196
 
 void. [Citations.]”
 
 (Union Planters Nat. Bank
 
 v.
 
 World Energy Systems, supra,
 
 816 F.2d at p. 1098.)
 

 It is irrelevant that the machine was near completion when the writ of attachment was levied, for the issuing bank may not look at the underlying contract in deciding whether to honor its obligation under the letter of credit. Instead, the issuing bank may consider only the documents presented in compliance with the terms of the credit.
 
 (San Diego Gas & Electric Co.
 
 v.
 
 Bank Leumi
 
 (1996) 42 Cal.App.4th 928, 933-934 [50 Cal.Rptr.2d 20];
 
 Paramount Export Co.
 
 v.
 
 Asia Trust Bank, Ltd.
 
 (1987) 193 Cal.App.3d 1474, 1480 [238 Cal.Rptr. 920].) Accordingly, the
 
 Brunskill
 
 decision does not assist Studwell.
 

 Ill
 

 Studwell contends that it had an attachment lien on the proceeds that were released to FED from the draws of March 2 and July 19, 1990. An attachment lien, however, applies only to the debtor’s interest in the property at the time of levy. When the levy was made, FED had no interest in the proceeds under the letter of credit, having assigned its interest to the bank. In any event, even if FED had not made the assignment, its interest was wholly contingent and uncertain, placing it beyond the reach of attachment at the time of levy.
 

 Disposition
 

 We affirm the judgment for the defendant bank, which is awarded costs on appeal.
 

 Spencer, P. J., and Masterson, J., concurred.
 

 A petition for a rehearing was denied July 10, 1997, and appellant’s petition for review by the Supreme Court was denied October 1, 1997.
 

 [1]
 

 Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.
 

 Section 701.010, which applies to writs of execution as well as writs of attachment (by virtue of section 488.600), provides: “(a) Except as otherwise provided by statute, when a levy is made by service of a copy of the writ of execution and a notice of levy on a third person, the third person at the time of levy or promptly thereafter shall comply with this section. [<]Q (b) Unless the third person has good cause for failure or refusal to do so: [Ü (1) The third person shall deliver to the levying officer any of the property levied upon that is in the possession or under the control of the third person at the time of levy unless the third person claims the right to possession of the property. [<]D (2) To the extent that the third person does not deny an obligation levied upon, or claim a priority over the judgment creditor’s lien, the third person shall pay to the levying officer both of the following: [SD (A) The amount of the obligation levied upon that is due and payable to the judgment debtor at the time of levy. [^0 (B) Amounts that become due and payable to the judgment debtor on the obligation levied upon during the period of the execution lien. [00 (3) If the third person makes a delivery or payment to the levying officer pursuant to this section, the third person shall execute and deliver any documents necessary to effect the transfer of the property. [OQ (c) For the purposes of this section, ‘good cause’ includes, but is not limited to, a showing that the third person did not know or have reason to know of the levy from all the facts and circumstances known to the third person.”
 

 [2]
 

 All references to the UCP-ICC in this opinion are to the 1983 revision, which has been superseded. At oral argument, it was suggested that the UCP-ICC provisions apply only to the signatories on the letter of credit, and not to Studwell or the bank. We were cited no authority in support of that proposition, which we reject.
 

 As indicated earlier, letters of credit are also governed by Division 5. Under Revised Division 5 California Uniform Commercial Code section 5116, letters of credit stating that they shall be governed by the UCP-ICC shall be governed thereby except where there is a conflict with the mandatory provisions of Division 5. Nonmandatory Division 5 provisions apply to the letter of credit if they do not conflict with the UCP-ICC. Because the letter of credit in this case was drafted in 1988, prior to the 1996 revision to Division 5, where it is applicable we will refer to the prior version of Division 5.
 

 [3]
 

 Former Division 5 California Uniform Commercial Code section 5116, subdivision (1) states that the “right to draw under a credit can be transferred or assigned only when the credit is expressly designated as transferable or assignable.” But subdivision (2) of that section provides: “Even though the credit specifically states that it is nontransferable or nonassignable the beneficiary may before performance of the conditions of the credit assign his right to proceeds. Such assignment is an assignment of an account under Division 9 on secured transactions and is governed by that division except that HO (a) The assignment is ineffective until the letter of credit or advice of credit is delivered to the assignee which delivery constitutes perfection of the security interest under Division 9; and HO (b) The issuer may honor drafts or demands for payment drawn under the credit until it receives a notification of the assignment signed by the beneficiary which reasonably identifies the credit involved in the assignment and contains a request to pay the assignee; and HQ (c) After what reasonably appears to be such a notification has been received the issuer may without dishonor refuse to accept or pay even to a person otherwise entitled to honor until the letter of credit or advice of credit is exhibited to the issuer.”
 

 In this case, the record shows that the assignment was perfected (by delivery of the original letter of credit to the bank) before the writ of attachment was issued. Accordingly, the assignment was valid under both Division 5 and the UPC-ICC.
 

 [4]
 

 The lower court in that case had stated, “Until its conditions have been performed, a letter of credit in the hands of an advising bank is neither property belonging nor a debt owing to the beneficiary, and is thus not subject to attachment or garnishment by creditors of the beneficiary. [Citations.]”
 
 (Furness Withy
 
 (Chartering) v.
 
 World Energy Systems
 
 (W.D.Tenn. 1985) 642 F.Supp. 50, 55.)
 

 [5]
 

 By our holding, we neither consider nor exclude a creditor’s other means to reach the proceeds from an executory letter of credit issued in the debtor’s favor. For example, we do not discuss whether a creditor may obtain an injunction prohibiting the beneficiary from assigning the credit and requiring the beneficiary to notify the creditor before drawing against it. (Compare
 
 Mitsui Manufacturers Bank
 
 v.
 
 Texas Commerce Bank-Fort Worth
 
 (1984) 159 Cal.App.3d 1051 [206 Cal.Rptr. 218] [Division 5 does not preclude an injunction preventing the beneficiary from drawing against a letter of credit], with
 
 New Tech Developments
 
 v.
 
 Bank of Nova Scotia
 
 (1987) 191 Cal.App.3d 1065 [236 Cal.Rptr. 746] [Division 5 precludes an injunction preventing the issuing bank from paying on a letter of credit].)