### In re TMCI ELECTRONICS, et al., Debtors.

### William A. Brandt, Jr., Chapter 11 Trustee, Plaintiff,

### v.

### Fleet Capital Corporation, a Rhode Island Corporation, Defendants.

### Bankruptcy No. 98–60153–JRG. Adversary No. 97–5142.

United States Bankruptcy Court, N.D. California.

April 30, 1999.

---

**554**

William J. Lafferty, Howard, Rice, Nemerovski, Canady Falk & Rabkin, San Francisco, CA, for Plaintiff.

Jeffrey L. Jonas, Brown, Rudnick, Berlack and Israels, Boston, MA, for Defendants.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JAMES R. GRUBE, Bankruptcy Judge.

## I. INTRODUCTION

Before the court are cross-motions for summary judgment in the above-captioned adversary proceeding, involving a dispute over debtor TMCI Electronics, Inc. ("debtor")'s tax refund for the 1998 business year. William A. Brandt, Jr. ("Trustee"), debtor's Chapter 11 Trustee, and the Official Committee of Subordinated Debenture Holders ("Committee"), contend that the debtor's bankruptcy estate is entitled as a matter of law to a tax refund pertaining to a 1998 consolidated tax return that the Trustee filed on behalf of the debtor and its subsidiaries. Fleet Capital Corporation ("Fleet"), the debtor's largest secured creditor, contends that it is entitled to substantially all of the tax refund pursuant to its security interest in the general intangibles and after acquired property of both the debtor and its subsidiaries.

For the reasons discussed below, the Court finds that Fleet's security interest in general intangibles attached to the subsidiaries' proportional interest in the 1998 tax refund in the amount of $514,020.13, but did not attach to the debtor's own proportional interest in the 1998 tax refund, calculated to be $15,024.88.

## II. FACTUAL BACKGROUND

There are no material facts in dispute. Debtor is the parent corporation, and the holder of all outstanding stock, of Touche Manufacturing Co., Inc., Touche Electronics, Inc., TMCI/Trinity Acquisition Corp. dba Trinity Electronics, and Enterprise Industries, Inc. (hereinafter collectively referred to as "subsidiaries"). On March 2, 1998, the debtor and its subsidiaries entered into a Loan and Security Agreement with Fleet, pursuant to which Fleet obtained a security interest in, among other collateral, the after-acquired property and general intangibles of the debtor and its subsidiaries.

The tax year for the debtor and its subsidiaries is a calendar year, beginning

on January 1 and ending on December 31. Beginning in 1996, the debtor elected to file a single consolidated tax return on behalf of itself and its subsidiaries. During the 1998 tax year, the debtor and its subsidiaries suffered net operating losses totaling $7,766,965. Of this amount, $220,722 represents operating losses the debtor itself incurred, while the remaining $7,546,243 represents losses incurred by the subsidiaries.

An involuntary Chapter 7 petition was filed against the debtor in this Court on December 21, 1998, ten days prior to the end of the debtor's 1998 tax year. The debtor proceeded to convert to Chapter 11 on January 29, 1999. The subsidiaries, in turn, filed their own voluntary Chapter 11 petitions after the end of the 1998 tax year.

On February 1, 1999, or shortly thereafter, William A. Brandt, Jr. was appointed Trustee for the debtor and all of the subsidiaries, with the exception of Enterprise Industries, Inc. On March 3, 1999, the Trustee filed a consolidated federal income tax return on behalf of the debtor and its subsidiaries for the 1998 tax year.

According to the 1998 consolidated tax return, the Internal Revenue Service ("IRS") owed the debtor a refund of $529,045.01 attributable to carryback net operating losses incurred by the debtor and its subsidiaries. The IRS, in turn, issued a check in the amount of $529,045.01 payable to the debtor. The Trustee deposited these funds into a "Trustee Account" in the debtor's name, where the funds currently reside.

## III. SUMMARY OF LEGAL ISSUES AND PARTIES' CONTENTIONS

This dispute involves whether, and to what extent, Fleet's security interest in general intangibles attached to the 1998 tax refund.

It is well-accepted that the right to receive a tax refund constitutes a "general intangible." *See, e.g. In re Palmetto Pump & Irrigation,* 81 B.R. 109, 111 (Bankr.M.D.Fla.1987). However, under § 9203(1)(c) of the California Commercial Code, a security interest can only attach to a piece of collateral once the debtor acquires "rights" in the collateral.

Section 552(a) of the Bankruptcy Code, in turn, provides that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." Thus, for a creditor's security interest in general intangibles to attach to a debtor's tax refund, the debtor must have acquired "rights" in the tax refund prior to its petition date. If the debtor's "rights" to the tax refund accrue, or "vest," after its petition date, § 552(a) of the Bankruptcy Code terminates the creditor's security interest in the tax refund and in any other property to which the debtor acquires "rights" postpetition.

With few exceptions, it is widely accepted that the right to a tax refund "vests" at the end of the tax year, since by that point "all events necessary to establish Debtor's tax liability ha[ve] occurred;" the debtor's tax liability is "fixed, albeit unliquidated." *In re Glenn,* 207 B.R. 418, 421 (E.D.Pa.1997). *See also In re Conti,* 50 B.R. 142, 148 (Bankr.E.D.Va.1985); *In re Thorvund–Statland,* 158 B.R. 837, 839 (Bankr.D.Idaho 1993). The present matter, however, involves a situation where an involuntary petition was filed against the debtor ten days before the end of the tax year.

The Trustee and the Committee maintain that the debtor could have no "rights"

or "interest" in the 1998 tax refund until the end of the 1998 tax year. Prior to the end of the tax year, they argue, any right to a tax refund was too contingent or uncertain for Fleet's security interest to attach. As such, the Trustee and the Committee contend that Fleet's security interest did not attach to the 1998 tax refund because the debtor's involuntary petition was filed ten days before the end of the 1998 tax year.

Fleet, in turn, asserts that pursuant to *Western Dealer Management, Inc. v. England (In the Matter of Bob Richards Chrysler–Plymouth Corp.)*, 473 F.2d 262 (9th Cir.1973), each subsidiary of the debtor has its own separate interest in the 1998 tax refund to the extent that each subsidiary's net operating losses contributed to the tax refund. Fleet argues that since the subsidiaries all filed bankruptcy petitions after the end of the 1998 tax year, the subsidiaries' interests in the tax refund "vested" prior to the subsidiaries' respective petition dates. Hence, Fleet argues, its security interest attached to each subsidiary's proportional interest in the 1998 tax refund.

In addition, Fleet contends that its security interest attached to the debtor's own proportional interest in the 1998 tax refund on a pro rata basis, such that 1/365th of the debtor's interest in the tax refund vested each day in 1998 until the December 21, 1998 petition date.

## IV. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings through Bankruptcy Rule 7056, provides that the Court shall render judgment for the moving party ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In the present matter, the parties have filed cross motions for summary judgment. As there are no material facts in dispute, the Court is able to render judgment as a matter of law.

## V. DISCUSSION

### A. Fleet's Security Interest Attached to That Portion of the 1998 Tax Refund Attributable to the Subsidiaries' Operating Losses.

An overwhelming body of case law, both within the Ninth Circuit and in outside jurisdictions, holds that when a parent company and its bankrupt subsidiary file a consolidated federal income tax return, in the absence of an express or implied agreement to allocate the refund between parent and subsidiary, the resulting tax refund should inure to the benefit of the subsidiary whose operating losses generated the refund. *See Western Dealer Management, Inc. v. England (In the Matter of Bob Richards Chrysler–Plymouth Corp.)*, 473 F.2d 262 (9th Cir.1973).

In the seminal *Bob Richards* case, the non-debtor parent company, WDM, was an unsecured creditor of its bankrupt subsidiary. When WDM filed a consolidated tax return on behalf of itself and its subsidiary, the subsequent tax refund "was due to the earnings history of the bankrupt [subsidiary]." 473 F.2d at 263. The bankruptcy trustee sought to acquire the tax refund for the benefit of the estate. WDM, however, claimed as a right of set-off the unsecured obligation of the bankrupt. *Id.*

The Ninth Circuit held that the bankrupt subsidiary was entitled to the refund, noting that "the parties made no agreement concerning the ultimate disposition of

the tax refund." *Id.* The Court reasoned that "[a]llowing the parent to keep any refunds arising solely from a subsidiary's losses simply because the parent and subsidiary chose a procedural device to facilitate their income tax reporting unjustly enriches the parent." 473 F.2d at 265.

Although WDM and its subsidiary filed a consolidated income tax return, the Court ruled that this fact alone did not control disposition of the tax refund, as the "regulations are basically procedural in purpose and were adopted solely for the convenience and protection of the federal government. The Internal Revenue Service is not concerned with the subsequent disposition of tax refunds and none of its regulations can be construed to govern this issue." *Bob Richards,* 473 F.2d at 264.

*Bob Richards* has received nearly universal acceptance by a variety of different courts. *See, e.g., Capital Bancshares, Inc. v. Federal Deposit Insurance Corp.,* 957 F.2d 203 (5th Cir.1992) (Subsidiary bank, not parent company, entitled to tax refund generated by losses of subsidiary bank.); *Official Committee of Unsecured Creditors v. PSS Steamship Co., Inc.,* 928 F.2d 565 (2nd Cir.1991), *cert denied* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991)(Absent agreement between parent and subsidiary, the right to carryforward a tax deduction due to a NOL attributable to the subsidiary's pre-bankruptcy operation was property of the subsidiary's bankruptcy estate.); *Franklin Savings Corp. v. Franklin Savings Ass'n, (In re Franklin Savings Corp.),* 159 B.R. 9, 29 (Bankr. D.Kan.1993), *aff'd* 182 B.R. 859 (D.Kan. 1995)("When a subsidiary pays the original tax and incurs net operating losses that generate a refund, the subsidiary is entitled to any such tax refund."); *U.S. v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 111 B.R. 631, 638 (Bankr.N.D.Ohio 1990)(Subsidiary, not parent company, entitled to tax refund generated by subsid-

iary's operating losses since no "express or implied agreement" between parent and subsidiary.)

The Trustee and the Committee attempt to distinguish *Bob Richards* from the present matter on the basis of unjust enrichment. Specifically, they argue ·that the holding of *Bob Richards* is limited to preventing a non-debtor parent company from being unjustly enriched at the expense of creditors of the bankrupt subsidiary. Hence, they argue, *Bob Richards* is inapplicable to the present matter where the debtor and its subsidiaries are all in bankruptcy, as there is no propensity for unjust enrichment by a non-bankrupt entity.

However, the Trustee and the Committee point to no cases that support such a narrow reading of the unjust enrichment language in *Bob Richards.* Furthermore, cases interpreting *Bob Richards* have found unjust enrichment where both a parent company and its subsidiary are in insolvency proceedings.

For example, in *Federal Deposit Insurance Corp. v. Brandt (In the Matter of Florida Park Banks, Inc.),* 110 B.R. 986 (Bankr.M.D.Fla.1990), the debtor filed a consolidated federal tax return on behalf of itself and its wholly owned subsidiary, Park Bank, for the 1985 tax year. The Federal Deposit Insurance Corporation ("FDIC"), as Park Bank's receiver, sought a declaratory judgment that the FDIC, as opposed to the parent company's bankruptcy trustee, was entitled to the resulting tax refund generated through Park Bank's operating losses.

Holding that the FDIC was entitled to the refund, the Court explained that "[u]nder the Bob Richards' rationale, Park Bank would be entitled to the entire refund because Park Bank's losses are offset against its own income and to allow the Debtor a share of the refund would 'unjustly enrich' the Debtor since it paid none of the refunded taxes." 110 B.R. at 989.

In essence, the Court found that the tax refund made possible through operating losses of the subsidiary in receivership should be used to benefit creditors of that subsidiary rather than creditors of the bankrupt parent, notwithstanding the fact that parent and subsidiary filed consolidated tax returns. *See also Franklin Savings Corp. v. Franklin Savings Ass'n (In re Franklin Savings Corp.)*, 159 B.R. 9, 28 (Bankr.D.Kan.1993)(Supporting the above rationale, but ultimately holding that the bankrupt parent company was entitled to the tax refund due to existence of a "Tax Reimbursement Agreement" between the bankrupt parent and its subsidiary savings and loan association under control of a state-appointed conservator.); *Independent Bankgroup, Inc. v. Federal Deposit Insurance Corp. (In re Independent Bankgroup, Inc.)*, 217 B.R. 442 (Bankr.D.Vt.1998)(Holding that tax refund belongs to subsidiary under FDIC receivership in absence of adequate written agreement to allocate tax refund.)

Creditors of a bankrupt subsidiary rightly expect to be compensated from assets belonging to and earned by that subsidiary. As the United States Supreme Court stated in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983):

> ...to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate. This authorization extends even to property of the estate in which a creditor has a secured interest. Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with "adequate protection" for their interests.... *The creditor with a secured interest in property included in the estate must look to this provision for protection*... (emphasis added) (citations omitted)

To permit a bankrupt parent company to appropriate its bankrupt subsidiary's assets absent an express or implied agreement to do so unjustly enriches the parent (and the parent's creditors) to the jeopardy of the subsidiaries' creditors.

■ Based upon this analysis, *Bob Richards'* unjust enrichment rationale is applicable to the present dispute, and the subsidiaries' bankruptcy estates are entitled to the 1998 tax refund in an amount proportionately attributable to the subsidiaries' operating losses. The subsidiaries all filed their bankruptcy petitions after the close of the 1998 tax year. Thus, their respective interests in the 1998 tax refund vested prior to their petition dates and, accordingly, the subsidiaries each acquired an "interest" in the 1998 tax refund prior to their respective petition dates. Contrary to the Trustee and Committee's assertions, the mere fact that the debtor and its subsidiaries elected to file a consolidated income tax return does not entitle the debtor to the tax refund.

Consequently, the Court finds that Fleet's security interest in general intangibles attached to that portion of the tax refund attributable to the subsidiaries' net operating losses. This outcome is both logical and equitable, as it prevents the debtor's creditors from being unjustly enriched at the expense of the subsidiaries' creditors. Accordingly, the Trustee is ordered to disburse $514,020.13 to Fleet, representing the subsidiaries' proportional interests in the 1998 tax refund.

**B. Fleet's Security Interest Did Not Attach to the Debtor's Proportional Share of the 1998 Tax Refund.**

■ The Court is presented with the difficult and apparently unprecedented is-

sue of whether a creditor's security interest can attach to a debtor's tax refund when the debtor's bankruptcy petition is filed prior to the end of the tax year to which the refund pertains. For the reasons discussed below, the Court finds that Fleet's security interest in general intangibles did not attach to the debtor's proportional interest in the 1998 tax refund.

As discussed previously, under California Commercial Code § 9203(1)(c), a debtor must have "rights" in a piece of collateral before a security interest can attach to the collateral, and § 552 of the Bankruptcy Code terminates the effect of an after-acquired property clause as of the date the bankruptcy petition is filed. Thus, for a secured creditor's security interest to attach to a debtor's collateral, the debtor must have acquired "rights" in the collateral as of its petition date; if the debtor's "rights" accrue postpetition, Bankruptcy Code § 552 prevents the security interest from attaching to the collateral. Hence, the issue before the Court is whether the debtor acquired "rights" to any part of its proportional interest in the 1998 tax refund as of its petition date, which was prior to the end of its 1998 tax year.

Fleet contends that the debtor acquired "rights" in its 1998 tax refund on a daily, pro-rata basis throughout the 1998 tax year until the debtor's involuntary bankruptcy petition was filed on December 21, 1998. Hence, Fleet argues, its security interest attached to 355/365, or 97%, of the debtor's proportional interest in the tax refund. The Trustee and Committee, however, assert that the debtor had no "rights" in its portion of the 1998 tax refund as of the petition date. Therefore, they argue, Fleet's security interest did not attach to the debtor's proportional interest in the 1998 tax refund.

To the best of the Court's knowledge, there is no case law on point regarding this issue. By and large, the cases cited by the parties fall into one of two categories: (1) cases considering whether a debtor's interest in a tax refund is substantial enough for purposes of "set off" under § 553 of the Bankruptcy Code, *see, e.g., Rozel Industries, Inc. v. Internal Revenue Service (In re Rozel Industries, Inc.),* 120 B.R. 944 (Bankr.N.D.Ill.1990); and (2) cases considering whether a debtor's interest in a tax refund is substantial enough to constitute property of the estate, *see, e.g., Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

While these two lines of cases are instructive by analogy, they both involve issues particular to federal bankruptcy law. The present issue, however, concerns California state law—namely, whether the debtor acquired "rights" in its 1998 tax refund pursuant to California Commercial Code § 9203(1)(c) as of its petition date. The Court notes that although this issue is essentially one of state law, it would not arise outside the context of bankruptcy law, since outside of bankruptcy § 552 would not operate to terminate a security interest in after-acquired property. Rather, a security interest would simply attach whenever the debtor acquired "rights" in its tax refund.

Under California law, there is support for the general proposition that some interests are simply too remote or uncertain for a creditor's lien to attach. *See generally Studwell Inc. v. Korean Exchange Bank,* 55 Cal.App.4th 1185, 1190, 64 Cal. Rptr.2d 538, 540–41 (1997)(Beneficiary's contingent interest in executory negotiable letter of credit not subject to attachment by a party in other litigation); California Civil Code § 1045 ("A mere possibility, not coupled with an interest, cannot be transferred."); California Civil Code § 700 ("A mere possibility, such as the expectancy of

an heir apparent, is not to be deemed an interest of any kind.")

■ This precedent lends credence to the common sense notion that a debtor cannot acquire "rights" in a mere expectancy. That is to say, a debtor cannot acquire rights in an item that may or may not come into existence based upon certain contingencies occurring in the future. This course of analysis leads, in turn, to a consideration of whether an interest in a tax refund can be considered contingent or uncertain prior to the end of the tax year to which the tax refund pertains.

■ As a general proposition, neither the amount nor even the existence of a tax refund is ascertainable until the end of the tax year; only once a tax year has ended have all the events determining entitlement to the tax refund occurred. *See In re Glenn,* 207 B.R. 418, 420–21 (E.D.Pa. 1997)("[T]he vast majority of courts to consider the issue have held that a taxpayer's interest in a tax refund arises at the end of the taxable year.... Debtor's right to his 1995 tax refund arose at the end of 1995. On December 31, 1995, all events necessary to establish Debtor's tax liability had occurred."); *Rozel Industries, Inc. v. Internal Revenue Service (In re Rozel Industries, Inc.),* 120 B.R. 944, 949 (Bankr. N.D.Ill.1990)(For purposes of set-off under Bankruptcy Code § 553, "a claim or debt must be found to be absolutely owing at the time of the filing of the petition to be considered a pre-petition item.... This does not necessarily require that the amount of such item be specifically known or that it be currently due, only that some definite liability has accrued."); *In re Richardson,* 216 B.R. 206, 211 (Bankr. S.D.Ohio 1997)("It is now well settled that an individual's right to a tax refund arises at the end of the tax year to which the refund relates.") Thus, prior to the end of a tax year, any right to a tax refund is uncertain, contingent and, hence, too remote for a debtor to acquire any "rights" in it.

Nonetheless, as Fleet points out, some courts, in the context of consumer bankruptcies, conclude that a debtor acquires a pro-rata interest in the prepetition portion of its petition year tax refund. *See Wilson v. Internal Revenue Service (In re Wilson),* 29 B.R. 54, 58 (Bankr.W.D.Ark.1982)(Involving right of set off under § 553 of the Bankruptcy Code). While such a practice may be feasible in the context of consumer debtors, who typically have regular and certain streams of income, the Court concludes that a pro rata approach is simply not practicable where the debtor is a business entity, as in this case.

In the business world, it is not uncommon for a company's earnings and losses during the course of a year to be erratic. A business can enjoy several profitable months followed by a sudden, sizable loss due to a labor strike, a competitor's entry of a new product into the market, or any other number of reasons. Thus, it is impossible to foresee what will happen to a corporate debtor during the remainder of the tax year after its bankruptcy petition is filed. Application of a pro rata rule, as Fleet proposes, necessarily entails speculation and forecasting about the course of a debtor's business from its petition date until the end of its tax year, meaning that any interest in a tax refund prior to the end of the tax year necessarily would be uncertain and contingent. For this reason, the Court rejects application of a pro rata approach and instead finds that a corporate debtor cannot acquire "rights" in a tax refund prior to the end of the tax year to which the refund pertains.

For the reasons described above, the Court concludes that the debtor did not have "rights" in the 1998 tax refund on the

date its involuntary petition was filed. Whether the debtor's bankruptcy petition was filed ten days or ten months before the end of the tax year, so long as there was time left in the tax year postpetition the right to a tax refund remained indeterminable. Hence, Fleet's security interest in general intangibles did not attach to any part of the debtor's proportional interest in the 1998 tax refund. Accordingly, the Court finds that the amount of the debtor's proportional interest in the tax refund, $15,024.88, is part of the debtor's bankruptcy estate, and orders that this amount be disbursed to the Trustee.

## VI. CONCLUSION

For the foregoing reasons, the cross motions for summary judgment are granted in part and denied in part. The Court orders that $514,020.13 of the 1998 tax refund be disbursed to Fleet and that the remaining $15,024.88 be disbursed to the Trustee.

The forgoing shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal Rules of Civil Procedure. Counsel for Fleet shall lodge a proposed form of Judgment with the Court within 30 days. The proposed form of Judgment need not contain the findings of fact and conclusions of law contained in this Order.